UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 18-civ-23105-Cooke/Goodman

BISCAYNE BEACH CLUB
CONDOMINIUM ASSOCIATION, INC.,

    Plaintiff,

v.

WESTCHESTER SURPLUS LINES
INSURANCE COMPANY,

    Defendant.
_____/

## MOTION TO VACATE APPRAISAL AWARDS

Defendant, Westchester Surplus Lines Insurance Company ("Westchester"), files this Motion to Vacate Appraisal Awards, and states as follows:

### INTRODUCTION

Biscayne Beach Club Condominium Association, Inc. ("Biscayne Beach") filed two property insurance claims with Westchester several weeks apart, one for Hurricane Irma and one for Tropical Storm Philippe. To resolve a dispute as to the amount of loss, Biscayne Beach filed this lawsuit and then invoked the policy's appraisal provision, which required each party to select a "competent and impartial appraiser." Biscayne Beach's appraisal estimate exceeded $40,000,000. Approximately seventeen months into the appraisal, and as the appraisers were concluding their final negotiations, Biscayne Beach's appraiser Blake Pyka disclosed to the appraisal panel for the first time, that he is entitled to a percentage of the outcome of the appraisal, which, under Florida law, would preclude him from serving as an impartial appraiser.

After the panel signed the appraisal awards, which totaled $13,844,843.83, Westchester filed a motion to reopen this case and to permit discovery into Mr. Pyka's partiality. Biscayne Beach filed an opposition and attached an affidavit by Mr. Pyka, in which he claimed he was mistaken about his own fee agreement when he made the disclosure, and declared that his mistaken belief had "zero impact" on the appraisal.  Even if Mr. Pyka mistakenly thought he had a contingency fee agreement, that alone could result in abnormally high appraisal estimates from Biscayne Beach and thereby unfairly influence the course of the appraisal.

The undisputed facts cast doubt on Mr. Pyka's impartiality and the fairness of the entire appraisal. Mr. Pyka's late disclosure, and then recanting of this disclosure after he learned of its potential consequences, have, at a minimum, tainted this appraisal. Had Mr. Pyka disclosed having a contingent fee on day one, he would have never been allowed to serve as appraiser. In fact, Biscayne Beach was required to replace its original appraiser (with Mr. Pyka) for this precise reason.  Biscayne Beach cannot circumvent the requirements of the policy and fundamental principles of fairness by delaying that disclosure by a year and a half thereby unfairly influencing the course of the appraisal. Accordingly, Westchester requests the Court set an evidentiary hearing to determine whether the appraisal awards must be vacated.

## FACTUAL BACKGROUND

### Events Leading to Appraisal

1. Westchester issued a commercial property insurance policy to Biscayne Beach bearing policy number D38045994 001, with policy period from August 27, 2017 to August 27, 2018 ("Policy"), a copy of which is attached as Exhibit A.

2.      Biscayne Beach filed two insurance claims under the Policy in 2017 for property damage to its insured condominium buildings, one claim relating to Hurricane Irma, and one claim relating to Tropical Storm Philippe, which occurred several weeks later.

3.      Biscayne Beach, via its counsel Mr. Jomarron, submitted estimates to Westchester totaling $28,426,501.50; Biscayne Beach also entered into assignment agreements with third parties who sought additional sums from Westchester. Westchester paid $2,291,284.52, and recognized an additional $1,403,644.26 as non-recoverable depreciation and $215,224.32 as recoverable depreciation.

4.      Biscayne Beach filed this lawsuit [D.E. 1-4] and then promptly demanded appraisal. Biscayne Beach named as its appraiser Lester Martinez, Biscayne Beach's public adjuster.

5.      Westchester responded to Biscayne Beach by letter dated September 13, 2018 [D.E. 11-3], and advised that Mr. Martinez cannot serve as appraiser because he is not "impartial" due to his 10% contingent fee. [D.E. 11-3] (citing *Verneus v. Axis Surplus Ins. Co.*, No. 16-21863-civ, 2018 WL 3417905 (S.D. Fla. July 13, 2018) (Goodman, J.)). Westchester also reserved its rights with respect to several potential coverage issues. Westchester named as its appraiser Pat Lewis of Independent Consulting Services.

6.      On September 13, 2018, the parties filed a Stipulation Abating Lawsuit Pending Appraisal [D.E. 11], and acknowledged: "Defendant's response outlined certain coverage issues that limit the appraisal and serves as the basis upon which the parties agreed to enter into this stipulation…. Defendant further objected to Plaintiff's choice of Mr. Martinez [as] appraiser in the belief that he is not 'impartial.'"

7. Biscayne Beach later named as its appraiser Blake Pyka of National Adjusting Solutions, LLC. Based upon Westchester's objection to Mr. Martinez, it was Westchester's understanding that Mr. Pyka did not have a contingency fee agreement.

### The Appraisal

8. Blake Pyka is the President and only known adjuster of National Adjusting Solutions, LLC. *See* Emails from Blake Pyka to Keith Womack dated February 3, 2020, attached as Composite Exhibit B.

9. Early on in the appraisal, Mr. Pyka advised Mr. Lewis that it "is in [Mr. Pyka's] best interest to not move to umpire and to settle with [Mr. Lewis] directly." Email from Blake Pyka to Pat Lewis dated January 16, 2019 attached as Exhibit C.

10. During appraisal, Mr. Pyka estimated Biscayne Beach's loss to be more than $40 million, which represents a more than 40% increase over Biscayne Beach's already high estimates. Comparison of Estimates dated November 5, 2019, attached as Exhibit D. In contrast, Mr. Pyka submitted invoices for incurred expenses totaling only approximately $1.2 million. *See* Summary of Incurred Invoice, attached as Exhibit E.

11. Approximately seventeen months after the parties stipulated to proceed in appraisal, Blake Pyka emailed the appraisal panel, stating: "Before we start with the final negotiations, please note that I have a very small percentage representing this file and does not and will not have any influence of any kind." Exhibit B. Mr. Lewis sought clarification and Mr. Womack, the umpire, asked "[w]hy are we discussing this now?", to which Mr. Lewis advised: "It was just revealed now. This is information I did not have before so I need to know." Ex. B-2. In response, Mr. Pyka advised: "I wanted to disclose this clearly as there will be no influence or bias on my end. We can proceed when ready." Ex. B-1.

12. Approximately a week later, Mr. Pyka questioned the valuations of the property proposed by Mr. Lewis, questioning whether "the amount of the evaluation of the property and/or the policy's co-insurance will affect the recovery of the 25% award for the tropical storm and the 75% award for the Hurricane Irma." Emails between Pat Lewis and Blake Pyka dated February 13, 2020, attached as Exhibit F.

13. Approximately four weeks later, the appraisal panel entered a series of awards (one for each building, for each claim) reflecting a total award of $13,844,843.83. Copies of the appraisal awards are attached as Exhibit G (collectively, the "Appraisal Awards").

14. Given Mr. Pyka's revelation and other coverage issues, Westchester filed an Omnibus Motion to Reopen Case and to Permit Limited Discovery [D.E. 30]. In its response in opposition, Biscayne Beach attached an Affidavit of Blake Pyka [D.E. 34-4].

15. In the affidavit, Mr. Pyka contends that he participated in the appraisal beginning in October 2018 and that he "recorded [his] time on a contemporaneous basis," but for reasons presently unknown, on February 3, 2020, he suddenly and "erroneously believed that [he] was being compensated on a contingent fee basis." Pyka Aff. ¶¶ 6-8 [D.E. 34-4]. As a result of his purported "mistaken belief," Mr. Pyka disclosed to the appraisal panel that he "had a contingent fee agreement." Pyka Aff. ¶ 9; *see also* Exhibit B.

16. Neither Mr. Pyka nor Biscayne Beach offered any explanation of Mr. Pyka's fee arrangement until Biscayne Beach filed the affidavit.

**ARGUMENT AND MEMORANDUM OF LAW**

Under both the Federal Arbitration Act and the Florida Arbitration Code, the analysis for vacating and modifying an appraisal award is the same. *Morgan Keegan & Co. v. Lieberman*, No. 11-20884-civ, 2011 WL 13223481, at *2 (S.D. Fla. Dec. 19, 2011) (Report and Recommendation);

*Hasson v. Hasson v. W. Reserve Life Assurance Co.*, 8:06-cv-523-T-23TBM, 2006 WL 2691723, at *4 (M.D. Fla. Sept. 19, 2006) ("The Florida Arbitration Code also sets forth the same narrow bases as the [Federal Arbitration Act] for vacating, modifying or correcting an award). The applicable arbitration statute "also provides the grounds for vacating insurance appraisal awards." *Villas at the Hammocks v. Empire Indem. Ins. Co.*, 2011 WL 13223726, 11-20470-cv-Ungaro (S.D. Fla. Apr. 5, 2011) (collecting cases); *see also* 9 U.S.C. § 10 (vacation of awards under the Federal Arbitration Act); Fla. Stat. § 682.13 (vacation of awards under the Florida Arbitration Code).

> Under the Florida Arbitration Code, an appraisal award may be vacated if:
>
> (a) The award was procured by corruption, fraud, or other undue means;
> (b) There was:
> 1. Evident partiality by an arbitrator appointed as a neutral arbitrator;
> 2. Corruption by an arbitrator; or
> 3. Misconduct by an arbitrator prejudicing the rights of a party to the arbitration proceeding;
>
> * * *
>
> (d) An arbitrator exceeded the arbitrator's powers ….

Fla. Stat. § 682.13(1)(a)-(b), (d). Similarly, under the Federal Arbitration Act, an appraisal award may be vacated:

> **(1)** where the award was procured by corruption, fraud, or undue means;
> **(2)** where there was evident partiality or corruption in the arbitrators, or either of them;
> **(3)** where the arbitrators were guilty of misconduct in refusing to postpone the hearing, upon sufficient cause shown, or in refusing to hear evidence pertinent and material to the controversy; or of any other misbehavior by which the rights of any party have been prejudiced; or
> **(4)** where the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made.

9 U.S.C. § 10(a)(1)-(4).

Under both statutes, "evident partiality," misconduct or misbehavior that prejudices the rights of a party, and a finding that the arbitrators exceeded their powers are grounds for vacating an award. Westchester presently moves to vacate the Appraisal Awards because of Mr. Pyka's "evident partiality" and because Mr. Pyka exceeded his powers under the Policy. While both arguments pertain to Mr. Pyka's partiality, there are subtle differences in the analysis because the "evident partiality" standard is statutorily imposed, whereas the impartiality component of the "exceeded his powers" argument is governed by the insurance contract. Given the limited information available to Westchester at this time, it does not believe it is presently appropriate to move on misconduct-based grounds, absent further discovery.

### a. The Appraisal Awards should be vacated because of Blake Pyka's evident partiality.

"A party challenging an arbitration award must show that the alleged partiality is 'direct, definite and capable of demonstration rather than remote, uncertain and speculative.'" *Aviles v. Charles Schwab & Co.*, 435 F. App'x 824, 828 (11th Cir. 2011) (quoting *Gianelli Money Purchase Plan & Tr. v. ADM Investor Servs.*, 146 F.3d 1309, 1312 (11th Cir. 1998)). An award should be vacated where there is "evidence of an actual conflict of interest" or there is "a business or other connection that might create a reasonable impression of possible bias that the arbitrator failed to disclose." *Id.* at 829. There is a two-step "evident partiality" analysis: first, the court determines whether the appraiser needed to disclose; then the court considers what he disclosed. *Univ. Commons-Urbana, Ltd. v. Univ. Constructors, Inc.*, 304 F.3d 1331, 1339 (11th Cir. 2002); *see also Commonwealth Coatings Corp. v. Continental Cas. Co.*, 393 U.S. 145 (1968). Whether an appraiser disclosed a conflict should be governed by a "reasonable person standard." *Univ. Commons-Urbana*, 304 F.3d at 1341. To disqualify an appraiser, "it need not be shown that bias influenced his judgment, but only that there was a circumstance tending to bias that judgment." *Gaines Constr. Co. v. Carol City Utils., Inc.*, 164 So. 2d 270, 272 (Fla. Dist. Ct. App. 1963).

7

While the "mere appearance of bias or partiality is not enough to set aside an arbitration award," it "should [be] enough to require the district court to hold an evidentiary hearing." *Univ Commons*, 304 F.3d at 1340 (citing *Lifecare Int'l, Inc. v. CM Med., Inc.*, 68 F.3d 429, 433 (11th Cir. 1995)); *see also Legion Ins. Co. v. Ins. Gen. Agency, Inc.*, 822 F.2d 541, 542 (5th Cir. 1987) ("[S]ome motions challenging arbitration awards may require evidentiary hearings outside the scope of the pleadings and arbitration record.").

1. **Mr. Pyka has a direct financial interest in the appraisal.**

An appraisal award shall be vacated where an appraiser has a financial interest in the outcome. *See Austin S. I, Ltd. v. Barton-Marlow Co.*, 799 F. Supp. 1135, 1142 (M.D. Fla. 1992) (explaining that an arbitration award may be vacated where "the arbitrator had a personal interest in the proceedings, whether pecuniary or otherwise, which would have biased his or her judgment in the proceedings"). Mr. Pyka admits that, at minimum, he believed he was being compensated under a contingent fee agreement. That is, he believed that his compensation was directly tied to the amount of the appraisal award. Mr. Pyka contends that he only held this belief from February 3, 2020 to sometime after he signed the $13.8 million Appraisal Awards. Westchester has not yet had an opportunity to take discovery on the evolution of Mr. Pyka's understanding of his own fee agreement.

Nonetheless, Mr. Pyka's admission, regardless of its correctness, is sufficient to demonstrate "evident partiality" because he *believed* he had a contingent fee arrangement, meaning Mr. Pyka had the state of mind and judgment of someone with a financial interest in the outcome of the appraisal. Further, more than a year before Mr. Pyka made this disclosure, he advised Mr. Lewis that it is in Pyka's "best interest" to resolve the claim directly with Mr. Lewis without an umpire. Exhibit C. Mr. Pyka's "interest" in the appraisal impacted his decision making throughout

8

the entire process. Shortly after Mr. Pyka disclosed his contingent fee arrangement, he questioned whether valuations of the property proposed by Mr. Lewis will trigger the Policy's co-insurance penalty and "affect the recovery" of the appraisal awards. Exhibit F.[1] Thus, not only did Mr. Pyka have an interest in the outcome, he sought to influence it. Even if Mr. Pyka's contingent fee had "zero impact" on the appraisal, as he suggests, it creates a "reasonable impression of possible bias." *Aviles*, 438 F. App'x at 829.

### 2. **Mr. Pyka's late, vague disclosure did not ameliorate his partiality.**

Biscayne Beach did not disclose Mr. Pyka's contingent fee relationship to Westchester or its counsel; Mr. Pyka only advised Westchester's non-attorney appraiser and the umpire, Keith Womack. Even when Mr. Pyka advised the appraisal panel of his contingent fee, he did so at the very end of the appraisal process, seventeen months in.  He further provided no details and did not answer follow-up questions from Westchester's appraiser, Pat Lewis. Instead, Mr. Womack asked "[w]hy are we discussing this now?" and the discussion ended. Exhibit B. Further, at the time Mr. Pyka made this disclosure, Westchester could not object to him serving as appraiser. *See Univ. Commons-Urbana*, 304 F.3d at 1344 ("Also relevant is whether Mayerson delayed disclosing the meeting until it was unreasonable for Universal and Reliance to object to his participation in the arbitration."). The appraisal had been in progress for nearly a year and a half, and the appraisers jointly appointed an umpire and conducted multiple inspections. In contrast, when Biscayne Beach initially appointed its public adjuster as appraiser, Westchester was able to object before the appraisal began.

---

[1] A coinsurance penalty reduces the amount payable for a claim when the property is underinsured. Condominium Association Coverage Form, CP 00 17 10 12, at 12.

Additionally, Mr. Pyka's submission of an affidavit, wherein he claims his disclosure of having a contingent fee agreement was a mistake—a contingent fee in an appraisal where he estimated the loss at more than $40 million and signed an award for more than $13.8 million—raises questions.[2] The problem, therefore, is that Mr. Pyka and Biscayne Beach and/or Biscayne Beach's attorneys control all of the information relevant to this inquiry. Mr. Pyka made a significant disclosure about his financial interest late into the appraisal, and we are now asked to simply ignore that because Mr. Pyka recanted his statement after Westchester raised the specter that the Appraisal Awards might be set aside. Mr. Pyka's affidavit further heightens the concerns about his partiality. Given the potential for concealment, this case is distinguishable from *Commonwealth Coatings* and most other cases analyzing potential partiality. *See Commonwealth Coatings*, 393 U.S. at 152 (Fortas, J., dissenting) ('There is no suggestion of concealment as distinguished from the innocent failure to volunteer information.").

Biscayne Beach has created an untenable situation. Late into the appraisal, as the panel was beginning its final negotiations—well after it would be reasonable for Westchester to object—Mr. Pyka disclosed that he has a financial interest in the outcome. Mr. Womack's lack of interest appears to have assured Mr. Pyka that the issue was resolved. It was only after Westchester suggested that the Appraisal Awards might have to be set aside and that coverage might be void under the Policy's Concealment, Misrepresentation or Fraud condition,[3] that Mr. Pyka changed his story. This is the type of situation that impartiality requirements are meant to avoid, and that

---

[2] Westchester also notes that it is disingenuous for Mr. Pyka to assert that his "mistaken belief had zero impact" since "the appraisal amounts had [already] been determined," Aff. ¶ 13 [D.E. 34-4], because Mr. Pyka's disclosure email states he was making the disclosure "[b]efore we start with the final negotiations." Exhibit B.

[3] *See generally* Defendant's Omnibus Motion to Reopen Case and to Permit Limited Discovery [D.E. 30].

discovery and evidentiary hearings are meant to flesh out. Accordingly, the Appraisal Awards should be vacated because of Mr. Pyka's evident partiality.

b. **The Appraisal Awards should be vacated because Blake Pyka exceeded his authority in continuing to act as appraiser and signing the Appraisal Awards after coming under the belief that he was entitled to a percentage of the awards.**

"[W]here a party to an insurance contract has invoked the policy's appraisal provision, the appraisal proceeding **should be conducted in accordance with the policy provisions** …." *Guzman v. Am. Sec. Ins. Co.*, 377 F. Supp. 3d 1362 (S.D. Fla. 2019) (emphasis added);[4] *Szuts v. Dean Witter Reynolds, Inc.*, 931 F.2d 830, 831 (11th Cir. 1991) ("The power and authority of the arbitrators in an arbitration proceeding is dependent on the provisions of the arbitration agreement under which the arbitrators were appointed.").

The Policy states, in pertinent part:

**E. Loss Conditions**

> The following conditions apply in addition to the Common Policy Conditions and the Commercial Property Conditions:
>
> **2. Appraisal**
>
> If we and you disagree on the value of the property or the amount of loss, either may make written demand for an appraisal of the loss. In this event, each party will select a competent and impartial appraiser. The two appraisers will select an umpire. If they cannot agree, either may request that selection be made by a judge of a court having jurisdiction. The appraisers will state separately the value of the property and amount of loss.

---

[4] In *Guzman*, an umpire circulated an award that was signed by him. Approximately half an hour later, one of the appraisers objected, requesting the other appraiser's estimate and requesting the award be itemized. *Guzman*, 377 F. Supp. 3d at 1363. Several minutes later, the other appraiser replied with a fully executed copy of the award. Approximately an hour later, the umpire replied advising the second appraiser to circulate his estimate and advising that he will "hold off on the final …." A few days later, the umpire sent a revised award, which the first appraiser signed. The court held that the umpire "lacked the authority to unilaterally modify the award." *Id.* at 1365. The court explained that once the appraisal award was final, the umpire lacked authority to modify the award. *Id.* at 1366 (citing Fla. Stat. § 682.10 (modification of arbitration awards)).

> If they fail to agree, they will submit their differences to the umpire. A decision agreed to by any two will be binding. Each party will:
>
> **a.** Pay its chosen appraiser; and
>
> **b.** Bear the other expenses of the appraisal and umpire equally.
>
> If there is an appraisal, we will still retain our right to deny the claim.[5]

Therefore, to qualify as an appraiser, Mr. Pyka must be "competent and impartial."

Under Florida law, "[i]t is well-settled that an appraiser with a financial interest in the outcome of an appraisal is not impartial." *Shores at Coco Plum Condo. Ass'n, Inc. v. Westchester Surplus Lines Ins. Co.*, No. 18-23910-civ-Cooke-Goodman, 2019 WL 2223172, at *2 (S.D. Fla. Apr. 29, 2019) (citing *Verneus v. Axis Surplus Ins. Co.*, No. 16-cv-21863, 2018 WL 3417905, at *7 (S.D. Fla. July 13, 2018)). In *Shores at Coco Plum*, the court explained that "[b]y virtue of the contingency compensation plan, [the appraiser] has a vested interest in appraising the Property at the highest possible recovery because his compensation will be a percentage of the appraisal." *Id.*

Even if an appraiser "could be impartial in the subjective sense, the objective appearance of impropriety warrants disqualification." *Milton Carpenter Ctr., Inc. v. Cincinnati Ins. Co.*, 3:13-cv-624, 2014 WL 12482616, at *2 (N.D. Fla. May 5, 2014) (addressing whether an appraiser was "competent and impartial."). "If there is a basis for any reasonable doubt" as to the appraiser's "possessing that state of mind which will enable him" to enter an impartial award, the appraiser should be disqualified. *See Longshore v. Fronrath Chevrolet, Inc.*, 527 So. 2d 922, 923 (Fla. 4th DCA 1988) (citing *Singer v. State*, 109 So. 2d 7, 22 (Fla. 1959)) (discussing juror competency).

Disclosure of a financial interest is insufficient to qualify as an "impartial" appraiser. In *Rios v. Tri-State Ins. Co.*, 714 So. 2d 547 (Fla. 3d DCA 1998), the court concluded that disclosure is the appropriate remedy, citing *Commonwealth Coatings*. This Court recognizes, however, that

---

[5] Condominium Association Coverage Form, CP 00 17 10 12, at 10.

*Rios* has been undermined by changes in the Code of Ethics for Arbitrators in Commercial Disputes, which served as the basis for the opinion. *Shores at Coco Plum*, 2019 WL 2223172, at *2 (citing *Fla. Ins. Guar. Ass'n v. Branco*, 148 So. 3d 488, 495 (Fla. 5th DCA 2014)). Therefore, disclosure of a financial interest does not make someone eligible to be an "impartial appraiser" where the Policy "expresses the parties' clear intention to restrict appraisers to people who are, in fact, [impartial]." *Branco*, 148 So. 3d at 496.

Blake Pyka admittedly possessed the state of mind of a person with a financial interest in the outcome of the appraisal. Once Mr. Pyka believed he had a contingent fee, he was no longer eligible to serve as an appraiser under the terms of the Policy. Unlike the "evident partiality" analysis above, in the context of an insurance appraisal where the policy requires "impartial" appraisers, disclosure of a financial interest does not neutralize the appraiser's partiality. It would also make little sense if the impartiality requirement applied only at the time of appointment so that appraisers would be free during the appraisal to obtain a financial interest in the outcome. If, at any time prior to the entry of the appraisal award, an appraiser is no longer "impartial," then that appraiser can no longer serve as appraiser and influence the appraisal panel. Accordingly, Mr. Pyka exceeded his authority as appraiser both by continuing to serve as appraiser and influencing the appraisal, and by signing the Appraisal Awards. Once Mr. Pyka developed the belief that he was entitled to a percentage of the outcome, regardless of whether he was in fact entitled to such payment, he lacked authority to serve as appraiser and was required to immediately withdraw from the appraisal. Mr. Pyka did not do so, and therefore, the Appraisal Awards should be vacated.

As an additional matter, the Policy requires "competent" appraisers. Mr. Pyka states in his affidavit that between October 2018 and March 2020, he contemporaneously recorded his time and kept records of his expenses because, until February 3, 2020, he believed he was being paid

hourly. Aff. ¶¶ 6-7 , 11-12[D.E. 34-4]. Yet, Mr. Pyka claimed he believed that from February 3, 2020 through when he signed the Appraisal Awards on March 11, 2020, that he was being compensated under a contingent fee agreement. So, while Mr. Pyka was contemporaneously recording his time as he purportedly did for more than a year, he became "mistaken" about why he was recording his time and about how he was being compensated. These statements raise concerns that Westchester should be afforded the opportunity to explore in discovery.

### c. **Westchester respectfully requests an evidentiary hearing and the right to take discovery in advance of the hearing.**

Westchester files this motion at this time in an abundance of caution in relation to the running of the relevant statutory limitation periods. However, Westchester does not believe any limitation periods are currently running because Westchester has not had an opportunity to take discovery. *See* 9 U.S.C. § 12; Fla. Stat. § 683.13. Nonetheless, the email disclosure by Mr. Pyka that he has a contingent fee agreement, and Mr. Pyka's affidavit confirming that he disclosed having a contingent fee agreement, provide a substantial basis for further inquiry. Under Eleventh Circuit authority, the Court is required to hold an evidentiary hearing once the moving party alleges prima facie grounds for vacatur of the award. *Univ. Commons-Urbana*, 304 F.3d at 1341.

In *University Commons-Urban*, the moving parties challenged whether an arbitrator was impartial. *Id.* at 1333. "The district court rejected this ground on its face, without holding an evidentiary hearing. [The Eleventh Circuit] conclude[d] that appellants' allegations of partiality are sufficient to warrant an evidentiary hearing." *Id.* "[F]inding discrepancies regarding an arbitrator's possible conflicts and his disclosures about those conflicts" require "that an evidentiary hearing [be] held and the nature of the relationships at issue [be] ascertained." *Id.* at 1341 (quoting *In re Sanko S.S. Co., Ltd. v. Cook Indus., Inc.*, 495 F.2d 1260, 1262-63 (2d Cir. 1973)).

14

Mr. Pyka made a significant, late disclosure that he was entitled to a percentage of the outcome of the appraisal. Then, when Westchester raised the potential for vacatur or for finding the Policy void, Mr. Pyka did an about-face and claimed he was mistaken. In addition to Mr. Pyka's partiality and his exceeding his authority by continuing as appraiser, Mr. Pyka's sudden and unexplained change in position raises questions of whether there was misconduct by Mr. Pyka and Biscayne Beach. Westchester believes it will be necessary to take the deposition of Mr. Pyka and any other persons who may have been involved with the purported fee agreement.[6] Once the parties develop a record, it would be appropriate to allow the parties to offer evidence in support of their positions. Given that Westchester has not yet had an opportunity for discovery, Westchester also requests leave to amend or supplement this motion after reasonable opportunity for discovery.

WHEREFORE, Defendant, Westchester Surplus Lines Insurance Company, respectfully requests the Court permit discovery, hold an evidentiary hearing, enter an Order vacating the Appraisal Awards, and awarding any other relief the Court deems equitable, just, and proper.

Respectfully submitted,

**COZEN O'CONNOR**

By: /s/ John David Dickenson
John David Dickenson
Florida Bar No. 575801
jdickenson@cozen.com
Chad A. Pasternack
Florida Bar No. 117885
cpasternack@cozen.com
One North Clematis Street, Suite 510
West Palm Beach, Florida  33401
Telephone:  (561) 515-5250

*Counsel for Defendant, Westchester Surplus Lines Insurance Company*

---

[6] Westchester believes it will be necessary to take, at minimum, the depositions of Mr. Pyka and a representative of Biscayne Beach.

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on June 10, 2020, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF. I also certify that the foregoing document is being served this day on all counsel of record identified on the attached Service List in the manner specified, either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to electronically receive Notices of Electronic Filing.

                                                      /s/ John David Dickenson
                                                      John David Dickenson

**SERVICE LIST**

*Counsel for Plaintiff*
Jesmany Jomarron, Esq.
JOMARRON | LOPEZ
4300 Biscayne Boulevard, Suite 305
Miami, FL 33137
eservice@justice360.com
jjomarron@justice360.com