IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION
CASE NO. 18-CV-23105-MGC

BISCAYNE BEACH CLUB CONDOMINIUM
ASSOCIATION, INC.,

    Plaintiff,

v.

WESTCHESTER SURPLUS LINES
INSURANCE COMPANY,

    Defendant.
_____/

**PLAINTIFF'S RESPONSE TO MOTION TO VACATE APPRAISAL AWARD**

Plaintiff BISCAYNE BEACH CLUB CONDOMINIUM ASSOCIATION, INC. ("**Plaintiff**" or "**Biscayne Beach**"), files its Response to the Motion to Vacate Appraisal Award [D.E. 36] ("**Defendant's Motion to Vacate**") filed by Defendant WESTCHESTER SURPLUS LINES INSURANCE COMPANY'S ("**Defendant**" or "**Westchester**") and states:

    **I.**    **FACTUAL BACKGROUND AND PROCEDURAL HISTORY**

1.    Plaintiff entered into an insurance contract, policy number D38045994001, with Defendant whereby Plaintiff agreed to pay Defendant premiums and Defendant agreed to provide insurance coverage for Plaintiff's property located at and around 15600 SW 104 Terrace, Miami, Florida 33196 (the "**Property**") from August 27, 2017, through August 27, 2018 (the "**Policy**").[1]

2.    The Property suffered damage from two separate storms—Hurricane Irma in September 2017, and Tropical Storm Philippe in October 2017—and Plaintiff thereafter filed two

---

[1]    A true and correct copy of the Policy is attached as Exhibit A.

(2) insurance claims, numbers KY17K2281730 (IRMA) and KY17K2410221 (PHILIPPE), under the Policy.

3. Because Defendant underpaid the claims, Plaintiff filed a complaint in state court against Defendant for breach of the Policy.[2]

4. Defendant then removed the action to this Court.[3]

5. The Policy includes an appraisal provision that states:

> **2. Appraisal**
> If we and you disagree on the value of the property or the amount of the loss, either may make written demand for an appraisal of the loss. In this event, each party will select a competent and impartial appraiser. The two appraisers will select an umpire. If they cannot agree, either may request that selection be made by a judge of a court having jurisdiction. The appraisers will state separately the value of the property and amount of loss. If they fail to agree, they will submit their differences to the umpire. A decision agreed to by any two will be binding. Each party will:
> **a.** Pay its chosen appraiser; and
> **b.** Bear the other expenses of the appraisal and umpire equally.
> If there is an appraisal, we will still retain our right to deny the claim.[4]

6. The Parties entered into appraisal, and Defendant selected Pat Lewis of Independent Consulting Services as its appraiser.[5]

7. Plaintiff selected Blake Pyka of National Adjusting Solutions, LLC, as its appraiser.[6]

---

[2] [D.E. 1-4.]
[3] [D.E. 1.]
[4] (Policy Ex A., p. 22.)
[5] [Def.'s Mot. to Reopen D.E. 30, ¶ 4.]
[6] Plaintiff also relies in support of this response on the Affidavit of Blake Pyka previously filed in support of Plaintiff's Response to Defendant's Omnimbus Motion to Reopen Case and to Permit Limited Discovery D.E. 34 ("Plaintiff's Response to Omnibus Motion") as Exhibit D thereto. For the convenience of the Court, it is reattached here in support of this response as Exhibit B.

8. During the time Mr. Pyka served as appraiser from October 2018 through February 3, 2020, Mr. Pyka understood he was being compensated on an hourly billing basis, not a contingent fee agreement.[7]

9. Mr. Pyka recorded his time on a contemporaneous basis and kept records of his expenses as his compensation for his work in the appraisal were on an hourly basis.[8]

10. On or about February 3, 2020, in the process of reviewing his file, Mr. Pyka erroneously believed he was being compensated by a contingent fee agreement.[9]

11. Mr. Pyka never had a contingent fee agreement for this appraisal.[10]

12. Mr. Pyka never had any financial interest in the amount of the appraisal for this action.[11]

13. Based on his mistaken belief, Mr. Pyka disclosed the non-existent contingent fee agreement to co-appraiser Patrick Lewis and umpire Keith Womack.[12]

14. Mr. Pyka's mistaken belief that he had a contingent fee agreement did not have any effect on Mr. Pyka's work or the conclusions Mr. Pyka reached in the appraisal for this action.[13]

---

[7] (Pyka Affidavit Ex. B, ¶¶ 5–6, 10–11.)
[8] (Pyka Affidavit Ex. B, ¶¶ 7, 11.)
[9] (Pyka Affidavit Ex. B, ¶ 8.)
[10] (Pyka Affidavit Ex. B, ¶ 10.)
[11] (Pyka Affidavit Ex. B, ¶ 10.)
[12] (Pyka Affidavit Ex. B, ¶ 9.)
[13] (Pyka Affidavit Ex. B, ¶¶ 12–14.)

15.     The appraisal awards[14] were agreed to by both appraisers and the umpire without any objection and signed first by Defendant's appraiser, Mr. Lewis, on March 10, 2020, then by Mr. Pyka on March 11, 2020, and finally by the umpire, Mr. Womack, on March 12, 2020.[15]

## II.     ARGUMENT AND MEMORANDUM OF LAW

The Florida Arbitration Code provides six (6) specific grounds upon which an arbitration award may be vacated.[16] § 682.13, Fla. Stat. Defendant cites two (2) of the factors as grounds to vacate the Appraisal Awards: (1) the alleged evident partiality of Mr. Pyka; and (2) allegations that Mr. Pyka exceeded his powers under the Policy. However, "[a] very high degree of conclusiveness attaches to an arbitration award." *Communications Workers of Am. V. Indian River Cty. School Bd.*, 888 So. 2d 96, 99 (Fla. 4th DCA 2004) (quotation omitted).

As explained below, the facts do not support a finding of evident partiality. Defendant's argument that Mr. Pyka exceeded his power is essentially a restatement of Defendant's evident partiality argument and, thus, fails for the same reasons the evident partiality argument fails.

---

[14]     True and correct copies of the Appraisal Awards were previously filed in support of Plaintiff's Response to Omnibus Motion as Composite Exhibit F, which is composed of two (2) awards for each of the twelve (12) buildings, a Declaration of Appraisers for each claim, spreadsheets itemizing the appraisal agreements by trade, and then further broken down by square footage. For the convenience of the Court, it is reattached here in support of this response as Composite Exhibit C.

[15]     (Appraisal Awards Comp. Ex. C.)

[16]     Defendant's Motion to Vacate cites both the Florida Arbitration Code and the Federal Arbitration Act as grounds for vacating an appraisal award. (Motion to Vacate at pg. 6.) Defendant is correct that the grounds for vacating an arbitration award under the Florida Arbitration Code and Federal Arbitration Act are substantially similar. However, the Acts' substantial similarity is not grounds to use the Acts interchangeably; substantive Florida law still applies to this action, and, thus, the Federal Arbitration Act should not be considered. *Marlowe v. Ironshore Specialty Ins. Co.*, 2020 WL 736628 *2 (M.D. Fla. Jan. 29, 2020) (applying Florida Arbitration Code to motion to vacate appraisal award because "[a] federal court sitting in diversity applies the substantive law of the forum state. . .").

– 4 –

Further, even treating the "exceeding powers" argument as a separate and distinct basis to vacate the Appraisal Awards, Defendant still comes up short.

### A. STANDARD FOR ESTABLISHING EVIDENT PARTIALITY

"The correct test for weighing an arbitrator's evident partiality 'consists of judging whether the complaining party made a showing through credible evidence, giving rise to a reasonable impression of partiality that was direct, definite, and capable of demonstration, as distinct from a mere appearance of bias that was remote, uncertain, and speculative." *Amalgamated Transit Union, Local 1579*, 264 So. 3d at 380.[17]

In *Amalgamated Transit*, the Court found the trial court deviated from the essential requirements of law in using an "outrageous findings standard" to judge evident partiality because the standard "could impermissibly lead to trial courts reevaluating factual findings and legal conclusions." *Id*. at 381. Therefore, when deciding if there is evident partiality, this Court should not look into the factual findings and legal conclusions of the appraisal panel but, rather, must limit the review to definite partiality shown by credible evidence. *Id.* Defendant fails to establish evident partiality because: (1) Defendant's Motion to Vacate fails to provide any evidence of partiality; (2) Defendant waived its right to vacate the Appraisal Awards for evident partiality; and (3) Defendant's Motion to Vacate fails to show Defendant's rights were prejudiced.

   *1. The Present Facts Do Not Support a Finding of Evident Partiality*

"[I]t is necessary . . . to produce (in support of the motion [to vacate]) evidence which would be admissible in a court of law." *See Carol City Utilities, Inc. v. Gaines Constr. Co.*, 201 So. 2d 242, 243 (Fla. 3d DCA 1967) (finding affidavits containing hearsay statements were not

---

[17] "A trial court's failure to use the correct test in judging the partiality of the arbitrator and the failure to correctly interpret case law constitutes a departure from the essential requirements of law." *Amalgamated Transit Union, Local 1579*, 264 So. 3d at 380.

sufficient to support a motion to vacate). Defendant's Motion to Vacate does not present any admissible evidence whatsoever. Rather, Defendant's Motion to Vacate relies solely upon one hearsay statement from Mr. Pyka made in an unsworn e-mail.[18] Here, Mr. Pyka never even had a contingent fee agreement; instead, merely a brief mistaken belief that he had a contingent fee agreement.[19]

Defendant has not made, and cannot make, the necessary showing through credible evidence of a reasonable impression of partiality that was "direct, definite, and capable of demonstration" as distinct from a mere appearance of bias that was remote, uncertain, and speculative. *Amalgamated Transit Union, Local 1579*, 264 So. 3d at 380. Defendant's reliance on an unsworn, hearsay statement was conclusively rebutted by Mr. Pyka's sworn statement in his affidavit.[20]

Defendant's Motion to Vacate also fails to establish evident partiality because it attempts to require an improperly high standard of impartiality to the appraisers.[21]

> As the very nature of the widely-employed three-person arbitration panel itself implies, the arbitrators designated by the parties are not intended to be entirely disinterested or impartial. To the contrary, each is expected to be, in the vernacular, no more than unprejudiced on the side of the contestant which has appointed him.

*Lee v. Marcus*, 396 So. 2d 208, 209 (Fla. 3d DCA 1981).

> Since "evident partiality" is pointedly a basis for vacation only in the case of a neutral arbitrator, it is apparent that this provision reflects an understanding of the not disinterested nature of the party-appointed arbitrator.
> Accordingly, it has been held, seemingly without exception, that absent overt corruption or misconduct in the arbitration

---

[18]   (Def.'s Mot. to Vacate D.E. 36, p. 4.)
[19]   (Pyka Aff. Ex. B, ¶¶ 8, 11.)
[20]   (Pyka Aff. Ex. B at ¶¶ 8, 11.)
[21]   (Def.'s Mot. to Vacate D.E. 36, pp. 9–10.)

> itself, . . . no arbitrator appointed by a party may be challenged on
> the ground of his relationship to that party.

*Id.* (finding no evident partiality where attorney and arbitrator shared office space).

### 2. *Defendant Waived Evident Partiality as a Basis To Vacate the Appraisal Awards*

"Where the bias is apparent enough [and there is no timely objection], waiver will occur." *See Bianchi v. Roadway Exp., Inc.*, 441 F. 3d 1278, 1285 (11th Cir. 2006). In *Bianchi*, Bianchi sought to have his employment reinstated following termination by a grievance panel on the grounds the person representing him before the panel was biased. *Id.* at 1281. In ruling that Bianchi had waived his bias argument by not objecting timely and before the determination of the panel, the Eleventh Circuit analyzed its prior opinions discussing the necessity for "'full knowledge of the fact' underlying [the] bias claim" in order for waiver to occur. *Id.* at 1285 (citing *University Commons-Urbana, Ltd. v. Universal Constructors, Inc.*, 304 F. 3d 1331, 1340–41 (11th Cir. 2002), and *Middlesex Mut. Ins. Co. v. Levine*, 675 F. 2d 1197, 1204 (11th Cir. 1982)).

*Bianchi* cautioned against taking the principle of "full knowledge of the facts" too far noting that "[i]f merely adding additional facts to a bias claim were enough to avoid waiver, then waiver could be easily avoidable." *Bianchi*, 441 F. 3d at 1285.

On February 3, 2020, Mr. Pyka disclosed to the umpire, Mr. Womack, and Defendant's appraiser, Mr. Lewis, Mr. Pyka's mistaken belief that he had a financial interest in the Appraisal Awards.[22] Over four (4) weeks later, Mr. Lewis and Mr. Womack signed all of the Appraisal Awards along with Mr. Pyka.[23] At no time before executing the Appraisal Awards did Mr. Lewis, Mr. Womack, or Defendant object to the erroneously disclosed fact that Mr. Pyka had a financial interest in the Appraisal Awards.

---

[22]  (Def.'s Mot. to Vacate D.E. 36, ¶ 11.)
[23]  (Appraisal Awards Comp. Ex. C.)

– 7 –

Defendant only raised allegations of partiality after all three appraisers entered the Appraisal Awards, which Defendant clearly views as unfavorable.[24] In an analogous situation, courts routinely rule that motions attacking the partiality of judges after entry of judgment or ruling are "untimely when the complaining party delays an objection past the point at which he is deemed on notice of potentially disqualifying circumstances." *Matter of Andros Compania Maritima, S.A.*, 579 F. 2d 691, 700 (2d Cir. 1978); *see also U.S. v. Patrick*, 542 F. 2d 381, 390 (7th Cir. 1976) ("The law is well settled that one must raise the disqualification of the judge at the earliest moment after knowledge of the facts demonstrating the basis for such disqualification.").

"The purpose of the waiver doctrine is to prevent a party that knows of possible bias from making a tactical decision to try its luck with a proceeding and keep a proverbial ace up its sleeve in case things go badly." *Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Smolchek*, Case No. 12-80355-civ-MARRA, 2012 WL 4056092 at *3 (S.D. Fla. Sept. 17, 2012) (holding that movant could not establish evident partiality because movant waived the argument by not raising it prior to entry of arbitration award); *Bianchi*, 441 F. 3d at 1286 ("[W]e cannot accept that parties have a right to keep two strings in their bow—to seek victory before the tribunal and then, having lost, seek to overturn it for bias never before claimed.").

Any objection Defendant had to the Appraisal Awards based on the partiality of Mr. Pyka was waived when Mr. Lewis signed the Appraisal Awards on March 10, 2020, over four (4) weeks after receiving the erroneous disclosure from Mr. Pyka. *Dadeland Square, Ltd. v. Gould*, 763 So. 2d 524, 527 (Fla. 3d DCA 2000) (holding that the moving party waived the right to object to the arbitrator when put on notice of arbitrator's relationship to the opposing party but failed to object at the time of the pre-award disclosure and proceeded to determination by arbitrator); *Perez v.*

---

[24]   [Def.'s Motion to Reopen D.E. 30 (raising partiality of Mr. Pyka for the first time).]

*Cigna Health and Life Ins. Co.*, Case No. 8:18-cv-1862-T-60JSS, 2020 WL 3473735 *4 (M.D. Fla. June 4, 2020) (holding that vacatur on the basis of partiality was waived where arbitrator fully disclosed basis of partiality prior to entry of arbitration award and party moving for vacatur failed to object prior to entry of arbitration award).

> 3. ***Defendant's Appraiser and the Umpire's Execution of the Appraisal Awards Precludes a Finding of Evident Partiality***

The Florida Arbitration Code differs slightly, but in an important manner, from the Federal Arbitration Act in defining evident partiality. *Compare* § 682.13(1)(b)1., Fla. Stat. ("Evident partiality by an arbitrator appointed as a neutral arbitrator . . . or . . . Misconduct by an arbitrator prejudicing the rights of a party to the arbitration proceeding") *with* 9 U.S.C. § 10(a)(2) ("[W]here there was evident partiality or corruption in the arbitrators, or either of them"). "[T]he text of the federal statute differs in a significant aspect from the Florida statute. The Florida statute adds the qualifying provision *prejudicing the rights of any party* not found in the federal statute." *Brandon Jones Sandall Zeide Kohn Chalal & Musso, P.A. v. Beasley & Hauser, P.A.*, 925 So. 2d 1142, 1145 (Fla. 4th DCA 2006) (finding "decisions construing the text of the broader federal statute" do not "offer much guidance as to the meaning of the narrower Florida provision").[25] "It is incumbent upon the party pursuing the motion to vacate to demonstrate bias or prejudice on the part of the arbitrator, and if that burden is not sustained the award will be affirmed." *Carol City Utilities, Inc.*, 201 So. 2d at 243.

In order to vacate the Appraisal Awards for evident partiality, this Court must find Mr. Pyka's mistaken belief that he had a contingent fee agreement prejudiced Defendant's rights. *See*

---

[25]   Section 682.13, Florida Statutes, "require[s] the complaining party to prove *evident* partiality *prejudicing* the rights of the party. In other words, the partiality of the neutral must be obvious and plain and must be shown to have unfairly affected the rights of the complaining party." *Brandon Jones Sandall Zeide Kohn Chalal & Musso, P.A.*, 925 So. 2d at 1145.

*id.* The Appraisal provision of the Policy only requires two of the three members of the appraisal panel to agree for the Appraisal Awards to be binding.[26] All of the Appraisal Awards were signed and approved by both appraisers and the umpire.[27] Therefore, even if the facts could support the evident partiality of Mr. Pyka, his partiality alone would not prejudice Defendant. *Winfrey v. Simmons Foods, Inc.*, 495 F. 3d 549, 552–53 (8th Cir. 2007);[28] *see also Cassara v. Wofford*, 55 So. 2d 102, 105 (Fla. 1951) (holding that resignation of one arbitrator from a three arbitrator panel does not invalidate award agreed to by remaining two arbitrators); *Candales v. Allstate Ins. Co.*, 421 So. 2d 42, 43 (Fla. 3d DCA 1982) (holding that the trial court was required to confirm arbitration award reached by two arbitrators despite third arbitrator's rescission of his assent to the award); *Travelers Indemnity Co. v. Walton*, 384 So. 2d 939, 940 (Fla. 3d DCA 1980) (finding that the arbitration award agreed to by two arbitrators will not be vacated for third arbitrator's failure to participate in the vote or join in the final award).

Defendant's Motion to Vacate fails to establish any bias or prejudice necessary to vacate the Appraisal Awards for evident partiality and, therefore, should be denied.

---

[26] (Policy Ex. A, p. 22 ("A decision agreed to by any two will be binding").)
[27] (Appraisal Awards Comp. C.)
[28] In *Winfrey*, the Eighth Circuit denied the motion to vacate for evident partiality of one of the three arbitrators where the arbitration award was agreed to by all three arbitrators. 495 F. 3d 549, 552–53 (8th Cir. 2007). The Eighth stated:

> Even assuming that [the arbitrator] exhibited "evident partiality," Simmons has the burden under our case law to show that this partiality had a prejudicial impact on the arbitration award. *See Delta Mine*, 280 F. 3d at 821. Reviewing the issue *de novo*, we agree with the district court's conclusion that Simmons failed to meet this burden. Simmons presents no evidence indicating that [the arbitrator]'s partiality deceived or misled the other two arbitrators, prejudiced Simmon's ability to present its case, or in any way affected the award to which the arbitrators agreed unanimously. The mere possibility of prejudice is insufficient to justify setting aside the award.

B. DEFENDANT'S SECOND BASIS FOR VACATING IS A RESTATEMENT OF THE FIRST; REGARDLESS, THE APPRAISER DID NOT EXCEED HIS POWERS

"An arbitrator exceeds his or her power when he or she goes beyond the authority granted by the parties or the operative documents and decides an issue not pertinent to the resolution of the issue submitted to arbitration." *Communications Workers of Am.*, 888 So. 2d at 99 (quotation omitted); *Lake City Fire & Rescue Assoc., Local 2288 v. City of Lake City, Florida*, 240 So. 3d 128, 130 (Fla. 1st DCA 2018) (same).

The only requirements the Policy states is that the appraiser be "competent and impartial."[29] Defendant's Motion to Vacate fails to show Mr. Pyka lacked either impartiality or competency. Therefore, it cannot be said Mr. Pyka exceeded his powers as an appraiser. Defendant's argument that the Appraisal Awards should be vacated because Mr. Pyka exceeded his powers should be denied.

1. *Even If Mr. Pyka Was Receiving a Contingent Fee, It Is Not a Basis to Declare Mr. Pyka Is Not Impartial, Let Alone a Basis To Vacate the Appraisal Awards*

Defendant's allegations that Mr. Pyka had a contingent fee agreement are not grounds to vacate the Appraisal Awards because, according to controlling precedent, a contingent fee agreement does not preclude an appraiser from being impartial. *State Farm Fla. Ins. Co. v. Sanders*, 2020 WL 1870776 at 2 (Fla. 3d DCA, April 15, 2020) (recognizing *Galvis v. Allstate Ins. Co.*, 721 So. 2d 421 (Fla. 3d DCA 1998), and *Rios v. Tri-State Ins. Co.*, 714 So. 2d 547, 550 (Fla. 3d DCA 1998), as controlling law in Florida's Third District); *see also Brickell Harbour Condo. Ass'n, Inc. v. Hamilton Specialty Ins. Co.*, 256 So. 3d 245, 246 (Fla. 3d DCA 2018) (holding that in the case of an appraiser with a contingent fee agreement, disclosure rather than disqualification is a workable approach to the issue).

---

[29]  (Policy Ex. A, p. 22.)

The Appraisal provision of the Policy requires each party to select an "impartial appraiser."[30] In deciding whether an appraiser is impartial, this Court must "look to the decisions of the Florida appellate court that would have had jurisdiction over an appeal in this case had it been filed in state court"— i.e., the Third District Court of Appeal. *Bravo v. U.S.*, 532 F. 3d 1154, 1164 (11th Cir. 2008). Florida's Third District has held an appraiser with a contingent fee agreement is impartial as long as he discloses his financial interest. *Rios*, 714 So. 2d at 550.

In this case, when Mr. Pyka mistakenly believed he had a contingent fee agreement, he disclosed in compliance with Florida controlling precedent in Third District.[31] Florida's Third District has repeatedly upheld their position allowing for an appraiser to have a contingent fee agreement. *See Sanders*, 2020 WL 1870776 at 2; *Brickell, Harbour Condo. Ass'n, Inc.*, 256 So. 3d at 246; *Galvis*, 721 So. 2d 421.

The Southern District of Florida previously receded from *Rios* and *Galvis* reasoning that the decisions were based on outdated versions of the American Arbitration Association's Code of Ethics for Arbitrators in Commercial Disputes. *See Shores at Coco Plum Condo. Ass'n, Inc. v. Westchester Surplus Lines Ins. Co.*, 2019 WL 2223172 at 2 (S.D. Fla. Apr. 29, 2019). This Court's reasoning in *Shores at Coco Plum* is sound; however, the Court's ruling in *Shores at Coco Plum* and the other similar Southern District of Florida rulings receding from *Rios* and *Galvis* were entered prior to the Third District's most recent ruling on April 15, 2020, recognizing *Rios* and *Galvis* as controlling precedential law in the Third District of Florida. *Sanders*, 2020 WL 1870776 at 3.

---

[30] (Policy Ex. A, p. 22.)
[31] [D.E. 30, Ex. C.]

In *Sanders*, the Third District acknowledged the conflict among *Rios* and *Galvis* with Florida's other district courts of appeal, which hold an appraiser with a contingent fee agreement is not impartial; just as this Court previously noted in *Shores at Coco Plum*. *See id.* at 3. *Sanders* even went so far to state that the Third District may be "of the present belief that *Rios* and *Galvis* have been undermined by subsequent developments in the law, or that *Rios* and *Galvis* and its progeny are no longer viable, or that we should recede from those decisions." *Id.* Moreover, the concurrence in *Sanders* even quoted the *Shores at Coco Plum* and acknowledged this Court's reasoning in *Shores at Coco Plum* as to why *Rios* and *Galvis* were no longer controlling law of the Third District. *Id.* at 8.

Despite the disagreement expressed in *Sanders* concerning *Rios* and *Galvis*, and acknowledgment of this Court's reasoning in *Shores at Coco Plum*, *Sanders*, ruling on a writ of certiorari challenging the trial court's adherence to *Rios* and *Galvis*, followed the principles of *stare decisis* and recognized *Rios* and *Galvis* as the binding law of the Third District and denied the insurer's writ of certiorari. *Id.* at 3.

Like the *Sanders* court, this Court should also recognize *Rios* and *Galvis* as the controlling precedent of Florida's Third District. Following the Eleventh Circuit's binding precedent in *Bravo*, this Court should rule on Defendant's Motion to Reopen as if it were brought in a trial court within Florida's Third District. 532 F. 3d at 1164. The *Sanders* decision clearly states the trial courts of Florida's Third District continue to be bound by *Rios* and *Galvis*. *Sanders*, 2020 WL 1870776 at 2 (holding that "If the appraiser's financial interest is disclosed, it is acceptable for that appraiser to participate in the appraisal process. Accordingly, we must deny State Farm's petition for writ of certiorari on the basis of this Court's controlling precedent at the time of the trial court's order, articulated in *Rios* and *Galvis*."). Even if Mr. Pyka did have a contingent fee agreement, which he

did not, such an agreement would not exclude him from being an impartial appraiser under the terms of the Policy applying controlling Florida precedent.

### 2. *Defendant Does Not Provide a Basis for Suspecting Mr. Pyka Is Not a Competent Appraiser*

A contingent fee agreement does not preclude an appraiser from being considered a competent appraiser either. *Citizens Prop. Ins. Corp. v. M.A. & F.H. Props., Ltd.*, 948 So. 2d 1017, 1020 (Fla. 3d DCA 2007) (finding that an appraiser was competent, as required by the insurance policy, even though he was paid on a contingent fee agreement).

The only other basis Defendant provides for attacking Mr. Pyka's competency is the fact that he mistakenly believed he had a contingent fee agreement after a cursory review of his files.[32] Defendant takes a cheap shot at Mr. Pyka and questions his competency because he kept his hourly time for billing purposes throughout the appraisal but then mistakenly read his file to indicate he was being paid on a contingent fee basis. *Id.* Despite being an inadequate basis for questioning Mr. Pyka's competency, Defendant's low blow also attempts to derive benefit from the sworn facts that support the uncontradicted truism that Mr. Pyka did not have any financial interest in the Appraisal Awards.

### C. MR. PYKA'S AFFIDAVIT RENDERS AN EVIDENTIARY HEARING OR ANY FURTHER DISOVERY FUTILE AND A WASTE OF JUDICIAL RESOURCES.

Defendant alternatively requests the Court set an evidentiary hearing or open discovery into the topic of Mr. Pyka's fee arrangement. Mr. Pyka's affidavit clearly and conclusively rebuts any allegation that Mr. Pyka had a financial interest in the Appraisal Awards.[33] Any further discovery or evidentiary hearing would be futile as the only relevant inquiry, whether Mr. Pyka

---

[32] (Def.'s Mot. to Vacate, p. 14.)
[33] (Pyka Affidavit Ex. B, ¶¶ 8, 11.)

had a financial interest in the Appraisal Awards, has been addressed by Mr. Pyka under oath in his affidavit.[34] Further, the case Defendant relies on as the basis for requesting an evidentiary hearing or discovery has distinguishable facts and actually supports denial of Defendant's request for an evidentiary hearing and further discovery. *Univ. Commons-Urbana, Ltd.*, 304 F. 3d at 1340 (holding that the district court should have held an evidentiary hearing where arbitrator failed to disclose facts that created a reasonable impression of impartiality).

1. ***Mr. Pyka's Affidavit Renders an Evidentiary Hearing or Discovery Futile***

Defendant requests an evidentiary hearing or discovery into the "purported fee agreement."[35] However, Defendant does not provide any further indication of what it hopes to elicit from discovery and an evidentiary hearing or how any information elicited would be in any way relevant to Defendant's Motion to Vacate.[36]

Mr. Pyka has clearly stated he has never had a contingent fee agreement or any financial interest in the Appraisal Awards.[37] Defendant, contrarily, relies upon hearsay statements, which Mr. Pyka has stated were a mistake.[38] Defendant's allegations of evident partiality are based entirely on an unsworn e-mail sent by Mr. Pyka. Such hearsay statements are not a sufficient basis to vacate an appraisal award and, similarly, should not be a sufficient basis for an evidentiary hearing and discovery in the face of directly contradictory, sworn evidence. *Carol City Utilities, Inc.*, 201 So. 2d at 243 (holding that a motion to vacate must be based on admissible evidence).

---

[34] (Pyka Affidavit Ex. B, ¶¶ 10, 11.)
[35] (Def.'s Mot. to Vacate D.E. 36, p. 15.)
[36] (Def.'s Mot. to Vacate D.E. 36, p. 15.)
[37] (Pyka Affidavit Ex. B, ¶¶ 10, 11.)
[38] (Def.'s Mot. to Vacate D.E. 36, p. 4.)

## 2. *Eleventh Circuit Case Law as Applied to the Present Facts Weigh Against an Evidentiary Hearing and Discovery*

Defendants rely of *University Commons-Urbana* in demanding an evidentiary hearing or discovery. 304 F. 3d at 1340. Following entry of an arbitration award against it, Universal moved to vacate the arbitration award for the evident partiality of one of the three arbitrators. *Id.* at 1335. Universal alleged the arbitrator in question had an extensive business relationship with University Commons-Urbana and that the arbitrator had failed to fully disclose it. *Id.* at 1339. The Eleventh Circuit explained that a question of evident partiality requiring an evidentiary hearing existed "when either (1) an actual conflict exists or (2) the arbitrator knows of, but fails to disclose, information which would lead a reasonable person to believe that a potential conflict exists." *Id.* at 1339. Thus, the arbitrator's failure to fully disclose his extensive relationship and history with University Commons-Urbana triggered the need for an evidentiary hearing. *Id.* at 1340.

The facts in this case are the complete opposite of *University Commons-Urbana*. Neither of the two factors in the Eleventh Circuit's analysis exist here. Mr. Pyka's affidavit clearly states he never had a financial interest in this matter.[39] Therefore, an actual conflict does not exist. Mr. Pyka also fully disclosed the conflict that Defendant now relies on to demand an evidentiary hearing or discovery; namely, Mr. Pyka's mistaken belief that he had a contingent fee agreement.[40] A mistaken belief disclosed by Mr. Pyka before the award was signed and that Defendant had an opportunity to address and object to before the appraiser signed the award.

The Eleventh Circuit made clear that an evidentiary hearing would not have been necessary had the arbitrator fully disclosed the facts giving rise to the allegations of partiality. *Univ. Commons-Urbana, Ltd.*, 304 F. 3d at 1340 ("Of course, this, or any other, instance of alleged

---

[39]   (Pyka Affidavit Ex. B, ¶ 11.)
[40]   (Pyka Affidavit Ex. B, ¶¶ 8, 10.)

partiality would be moot if . . . [the arbitrator] had disclosed it to the parties."). Therefore, *University Commons-Urbana* would dictate that both an evidentiary hearing and discovery are moot in light of Mr. Pyka's disclosure and Mr. Pyka's Affidavit. *Id.*

Accordingly, Defendant's Motion to Vacate and request for evidentiary hearing and discovery should be denied.

Dated July 9, 2020.

                                        Respectfully submitted,

**FARRELL PATEL
JOMARRON & LOPEZ PLLC**
*Counsel for Plaintiff*
4300 Biscayne Boulevard, Suite 305
Miami, Florida 33137
Telephone: (305) 717-7530
Facsimile: (305) 717-7539
Primary e-mail: eservice@justice360.com
Secondary e-mail: jjomarron@justice360.com
Tertiary e-mail: wmccaughan@justice360.com

By: /s/ Jesmany Jomarron
     Jesmany Jomarron, Esq.
     Florida Bar No. 69165
     William P. M<sup>c</sup>Caughan Jr., Esq.
     Florida Bar No. 41573

**DORTA LAW**
*Counsel for Plaintiff*
334 Minorca Avenue
Coral Gables, FL 33134
Telephone: 305-441-2299
Telecopier: 305-441-8849
Primary e-mail: grd@dortalaw.com
Secondary e-mail: mrd@dortalaw.com
Tertiary e-mail: jgonzalez@dortalaw.com

By: /s/ Gonzalo R. Dorta
     GONZALO R. DORTA
     Florida Bar No. 650269
     MATIAS R. DORTA
     Florida Bar No. 770817

**CERTIFICATE OF SERVICE**

WE HEREBY CERTIFY that a true and correct copy hereof, was served on July 9, 2020, via CM/ECF upon John David Dickenson, jdickenson@cozen.com, and Chad A. Pasternack, cpasternack@cozen.com of Cozen O'Connor, One North Clematis Street, Suite 510, West Palm Beach, Florida 33401.

**FARRELL PATEL
JOMARRON & LOPEZ PLLC**
*Counsel for Plaintiff*
4300 Biscayne Boulevard, Suite 305
Miami, Florida 33137
Telephone: (305) 717-7530
Facsimile: (305) 717-7539
Primary e-mail: eservice@justice360.com
Secondary e-mail: jjomarron@justice360.com
Tertiary e-mail: wmccaughan@justice360.com

By: /s/ Jesmany Jomarron
    Jesmany Jomarron, Esq.
    Florida Bar No. 69165
    William P. M$^c$Caughan Jr., Esq.
    Florida Bar No. 41573

**DORTA LAW**
*Counsel for Plaintiff*
334 Minorca Avenue
Coral Gables, FL 33134
Telephone: 305-441-2299
Telecopier: 305-441-8849
Primary e-mail: grd@dortalaw.com
Secondary e-mail: mrd@dortalaw.com
Tertiary e-mail: jgonzalez@dortalaw.com

By: /s/ Gonzalo R. Dorta
    GONZALO R. DORTA
    Florida Bar No. 650269
    MATIAS R. DORTA
    Florida Bar No. 770817