IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION
CASE NO. 18-CV-23105-COOKE-GOODMAN

BISCAYNE BEACH CLUB CONDOMINIUM
ASSOCIATION, INC.,

       Plaintiff,

v.

WESTCHESTER SURPLUS LINES
INSURANCE COMPANY,

       Defendant.

_____/

## PLAINTIFF'S RESPONSE TO DEFENDANT'S RENEWED MOTION TO VACATE APPRAISAL AWARDS

Plaintiff BISCAYNE BEACH CLUB CONDOMINIUM ASSOCIATION, INC. ("**Plaintiff**"), files this response to the Renewed Motion to Vacate filed by Defendant WESTCHESTER SURPLUS LINES INSURANCE COMPANY ("**Defendant**").

Plaintiff filed insurance claims for Hurricane Irma and Tropical Storm Phillipe damages to twelve condominium buildings. Defendant paid $2,615,919.79 and refused to pay any more despite significantly higher estimates of Plaintiff's damages. To resolve the dispute, the parties agreed to appraisal and each designated an appraiser: Blake Pyka by Plaintiff, and Pat Lewis by Defendant. The party-appointed appraisers chose Keith Womack as the neutral umpire. The panel unanimously awarded $13,844,843.83 (the **"Appraisal Award"**)—five (5) times more than Defendant initially paid.

Now, Defendant moves to vacate the Appraisal Award claiming Mr. Pyka had a financial interest in the appraisal. Defendant relies on an unsworn e-mail in which Mr. Pyka mistakenly disclosed a financial interest where one never existed. Mr. Pyka testified that he was handling

FARRELL PATEL JOMARRON LAW PLLC
ATTORNEYS AT LAW

hundreds of appraisals after Hurricane Irma and relied solely on the contents of his file. He testified that, while he never had a contingency fee agreement, his file of Plaintiff's appraisal contained an unsigned contingency fee agreement he was using as a template. Mr. Pyka had not removed the unsigned agreement from his file, which caused him to mistakenly disclose a financial interest just in case in an abundance of caution. Defendant relied on this mistaken disclosure to seek vacatur for fraud, misconduct, and evident partiality, among others. However, the evidence clearly demonstrated no contingency existed, Plaintiff and Mr. Pyka always had an hourly fee arrangement, and the disclosure resulted from the disorganized file of an overwhelmed appraiser. Further, Defendant knew about the disclosure before entry of the Appraisal Award and did not object until after entry of the Appraisal Award. Allowing Defendant to object now is unacceptable as it would allow Defendant two strings in its bow—to seek victory before the tribunal and then, having lost, seek to overturn it for bias never before claimed.

## I.  FACTUAL BACKGROUND AND PROCEDURAL HISTORY

1.  Plaintiff insured its Property located at 15600 SW 104 Terrace, Miami, Florida 33196 (the "**Property**") with an insurance policy issued by Defendant (the "**Policy**").[1]

2.  The Property suffered covered damages, but the parties had a dispute as to the amount of the loss; Plaintiff filed suit in state court; Defendant removed to this Court.[2]

3.  The Parties agreed to appraisal under the Policy on or about October 2018, which resulted in the Appraisal Award of $13,844,843.83.

---

[1]  A true and correct copy of the Policy is attached as Exhibit A.
[2]  A true and correct copy of the depositions of Mr. Pyka, Mr. Lewis, and Mr. Womack are attached as Exhibits B, C, and D, respectively.

FARRELL PATEL JOMARRON LAW PLLC
ATTORNEYS AT LAW

4.      Plaintiff hired Mr. Pyka to serve as its appraiser on an hourly fee basis, not on a contingency.[3]

5.      In August 2019, while handling hundreds of appraisals,[4] Mr. Pyka realized he did not have a written agreement with Plaintiff and, not remembering the terms,[5] e-mailed Plaintiff an unsigned contingency agreement based on the only template he had as he explained he did not represent the plaintiff's side on appraisals.[6]

6.      Subsequently, Mr. Pyka testified Plaintiff's counsel called and rejected the proposed contingent agreement and reminded Mr. Pyka it was an hourly fee agreement.[7]

7.      On February 3, 2020, Mr. Pyka, in the process of finalizing the Appraisal Award and concurrently handling hundreds of appraisals for insurance company as the sole employee of his company,[8] found the unsigned agreement he e-mailed in August 2019, which he never removed[9] from the file.[10]

---

[3]      (Pyka Dep. Tr., Ex. B at 79:10–11 ("Again, I do not work this side [i.e. Plaintiff's side]. I did not ever have a percentage agreement at all whatsoever."); 87:22 (stating he does not have any other appraisals with undersigned attorney Jesmany Jomarron); 68:23–69:1; 69:3–70:18; 71:6 – 7; 74:7 – 9; 75:25 – 76:13; 76:17 – 24; 77:1–11; 77:22 – 24; 78:19 – 22; 79:8 – 9; Macrina Dep. Tr., Ex. G at 17:1–5; 22:20–23; 23:1–4.)

[4]      (Pyka Dep. Tr., Ex. B at 69:13–20 ("I was extremely busy, hundreds and hundreds and hundreds of claims I was dealing with . . . I just dropped the ball.").)

[5]      (Pyka Dep. Tr., Ex. B at 69:21–23 ("I remember that I had to sign some type of agreement. I cannot remember at all our agreement whatsoever.); 70:19–22 ("Is it your testimony that at the time you sent this e-mail, you did not think you had a contingency fee agreement" I didn't -- I couldn't remember what I had.").)

[6]      (Pyka Dep. Tr., Ex. B at 71:1–2 ("That's the only one I had[--i.e., a contingency fee agreement]. I didn't have a time and expense contract like this.").)

[7]      (Pyka Dep. Tr., Ex. B at 70:5–11 ("[Plaintiff's counsel] calls me and he says, what in the heck is going on? This is not what we agreed to at all. What are you doing? And I felt like a fool. . . . I completely made a mistake. I remember our agreement.").)

[8]      (Pyka Dep. Tr., Ex. B at 69:13–16; 84:25 (explaining he is sole owner and employee).)

[9]      (Pyka Dep. Tr., Ex. B at 71:12–16 ("I'm inexperienced with the business side of this, as you probably can tell, but I'm a good adjuster but not really a good business guy. I mean, this is a huge learning lesson for me, and I'm embarrassed honestly.").)

[10]     (Pyka Dep. Tr., Ex. B.at 76:3–5.)

FARRELL PATEL JOMARRON LAW PLLC
ATTORNEYS AT LAW

8.      Seeing the unsigned agreement, Mr. Pyka had some momentary uncertainty about how he was being paid and disclosed it "in abundance of caution, just to make sure."[11]

9.      The Appraisal Award[12] was signed by all three (3) panel members without objection, they all certified they impartially performed their duties, and swore they acted with strict impartiality with no interest in the property.[13]

10.     On April 10, 2020, Defendant moved to reopen the case to conduct limited discovery on the agreement between Mr. Pyka and Plaintiff and the composition of the award.

11.     To clarify the confusion created by Mr. Pyka's unsworn, mistaken disclosure, Mr. Pyka executed an affidavit swearing it was a mistaken disclosure and there was no contingency.[14]

12.     On March 1, 2021, this Court allowed limited discovery up to April 9, 2021, and the depositions of Mr. Womack, March 30, 2021, Mr. Pyka, April 2, 2021, Plaintiff's corporate representative, Domenic Macrina, April 5, 2021,[15] and Mr. Lewis, April 6, 2021, took place.[16]

---

[11]     (Pyka Dep. Tr., Ex. B.at 76:17–24 ("No, I just saw the form in my documents, and I -- in abundance of caution, I sent it. I knew I had to disclose it, if that was the case. I had so much going on. There was the tropical storm, Irma. I was extremely busy, just turning and burning claims. I saw that, turned and burned and disclosed it. It was complete -- it was a complete mistake and totally false."); Pyka Dep. Tr., Ex. B at 77:16–24.)

[12]     True and correct copies of the Appraisal Award, composed of two (2) awards for each of the twelve (12) buildings, a Declaration of Appraisers for each claim, and spreadsheets itemizing the appraisal agreements by trade that are then further broken down by square footage, are attached as Composite Exhibit E.

[13]     (Appraisal Award, Comp. Ex. E (signed by Mr. Lewis on March 10, 2020, Mr. Pyka on March 11, 2020, and Mr. Womack on March 12, 2020).)

[14]     (Pyka Aff., Ex. F.)

[15]     A true and correct copy of Mr. Macrina's deposition transcript is attached as Exhibit G.

[16]     (Omnibus Order D.E. 45.)

– 4 –

13.     The documents and depositions produced in discovery showed: (1) both Mr. Pyka[17] and Plaintiff[18] repeatedly testified no a contingency agreement existed; (2) Mr. Pyka's mistaken disclosure resulted from disorganized record keeping; (3) Mr. Lewis testified he updates insurance company clients during appraisals[19] and possibly informed Defendant of Mr. Pyka's disclosure prior to signing the Appraisal Award;[20] and (4) both Mr. Lewis[21] and Mr. Womack[22] confirmed they were not biased or prejudiced by Mr. Pyka.

## II.     ARGUMENT AND MEMORANDUM OF LAW

### A.     STANDARD OF REVIEW OF INSURANCE POLICY APPRAISALS

"Appraisal clauses are preferred, as they provide a mechanism for prompt resolution of claims and discourage the filing of needless lawsuits." *First Protective Ins. Co. v. Hess*, 81 So. 3d 482, 485 (Fla. 1st DCA 2011); *see also Marr v. Webb*, 930 So. 2d 734, 737 (Fla. 3d DCA 2006) ("[O]ur review of the arbitrators' decision to grant a certain award is very limited, with a high degree of conclusiveness attaching to an arbitration award."). For awards signed and approved by all three members of the panel, such as those in this action,[23] even higher deference is shown.[24]

---

[17]     (Pyka Dep. Tr., Ex. B at 79:10–11 ("Again, I do not work this side [i.e. Plaintiff's side]. I did not ever have a percentage agreement at all whatsoever."); 87:22 (stating he does not have any other appraisals with undersigned attorney Jesmany Jomarron); 68:23–69:1; 69:3–70:18; 71:6 – 7; 74:7 – 9; 75:25 – 76:13; 76:17 – 24; 77:1–11; 77:22 – 24; 78:19 – 22; 79:8 – 9.)
[18]     (Macrina Dep. Tr., Ex. G at 17:1–5; 22:20–23; 23:1–4.)
[19]     (Lewis Dep. Tr., Ex. C at 57:15 – 19.)
[20]     (Lewis Dep. Tr., Ex. C at 56:7 – 14.)
[21]     (Lewis Dep. Tr., Ex. C at 68:9–23.)
[22]     (Womack Dep. Tr., Ex. D at 57:14; 52:25–53:2; 57:3–19 (agreeing all panel members (1) acted in good faith, (2) did not try to negotiate an inflated or deflated amount but instead an amount of loss based on the agreed to damages, and (3) behaved in an impartial manner); 57:23–58:1.)
[23]     (Appraisal Award, Comp. Ex. E.)
[24]     *See Cassara v. Wofford*, 55 So. 2d 102, 105 (Fla. 1951) (resignation of one from a three arbitrator panel does not invalidate award agreed to by remaining two); *Candales v. Allstate Ins. Co.*, 421 So. 2d 42, 43 (Fla. 3d DCA 1982) (holding that the trial court was required to confirm award reached by two arbitrators despite third's rescission of assent to award); *Travelers Indem.*

"In diversity actions such as this, we apply the standards of state (here Florida) law." *Three Palms Pointe, Inc. v. State Farm Fire Cas. Co.*, 362 F. 3d 1317, 1318 (11th Cir. 2004) (citing *Erie R.R. Co. v. Tompkins*, 304 U.S. 64 (1938) (applying Florida law to an insurance policy appraisal clause).[25] Defendant's Renewed Motion to Vacate applies federal common law and the Federal Arbitration Act (**"FAA"**)[26] when helpful to lessen its burden to vacate the ***Appraisal*** Award by avoiding essential elements otherwise required to proven by Florida law, such as evidence of bias, prejudice, and reliance.[27] Defendant's reliance[28] on *UBS* and *Kong* for this point is misplaced.[29]

The Policy was "issued pursuant to the Florida surplus lines law"[30] where the parties agreed to submit to ***appraisal***, not ***arbitration***, which Florida law holds "should be conducted in

---

*Co. v. Walton*, 384 So. 2d 939, 940 (Fla. 3d DCA 1980) (finding an award agreed to by two arbitrators will not be vacated for the third's failure to participate in vote or join in final award).

[25]    *See also Marlowe v. Ironshore Spec. Ins. Co.*, No. 2:18-cv-245-FtM-38MRM, 2020 WL 736628, *2 (M.D. Fla. Jan. 29, 2020) (holding in an insurance appraisal case, "A federal court sitting in diversity jurisdiction applies the substantive law of the forum state, in this case, Florida."); *Rozier v. Hartford Ins. Co. of the Midwest*, No. 14-cv-20547-COOKE, 2014 WL 6751639 *3 (S.D. Fla. Dec. 1, 2014) (holding in an insurance appraisal case, "federal courts are to apply state *substantive* law and federal *procedural* law," in diversity actions) (quotation omitted).

[26]    Defendant cites federal law to support vacatur as imperfect execution because that ground is not available under Florida law. (Renewed Mot. to Vacate [D.E. 46] at pp.16–18.)

[27]    (Renewed Mot. to Vacate [D.E. 46] at pp. 11–21.)

[28]    Defendant points to cases stating the FAA governs the ***arbitration*** provisions of contracts involving interstate commerce, then concludes without citation to legal authority that the FAA and federal law control the interpretation of the ***appraisal*** provision in this insurance policy. (Renewed Mot. to Vacate [D.E. 46] at p. 11 (citing *UBS Fin. Servs. Inc. v. Walzer*, 2019 WL 7283220 at *2 (S.D. Fla. 2019), and *Kong v. Allied Prof'l Ins. Co.*, 750 F. 3d 1295, 1303 (11th Cir. 2014).)

[29]    Both cases deal with ***arbitration*** provisions and a question of federal statutory preemption of the FAA over the Florida Arbitration Code (**"FAC"**). *UBS* and *Kong* both examined the FAA and its legislative intent to determine the FAA controls when an ***arbitration*** provision not an appraisal clause is contained in a contract involving interstate commerce. Neither held, however, federal law controlled an ***appraisal*** clause in a Florida insurance policy as it is well settled that the law of the forum state controls. Therefore, the reasoning in *UBS* and *Kong* should not be extended to this action concerning an ***appraisal*** provision, which courts interpret with ***guidance*** from the FAC but have never held that the FAA would control. *See Citizens Prop. Ins. Corp. v. Cuban-Hebrew Congregation of Miami, Inc.*, 5 So. 3d 709, 712 (Fla. 3d DCA 2009) (finding the Florida Supreme Court looks to FAC "for guidance" over appraisal provisions).

[30]    (Policy, Ex. A.)

FARRELL PATEL JOMARRON LAW PLLC

ATTORNEYS AT LAW

accordance with the policy provisions and not pursuant to Florida's Arbitration Code." *Guzman v. Am. Security Ins. Co.*, 377 F. Supp. 3d 1362, 1364 (S.D. Fla. Mar. 27, 2019) (applying Florida law in insurance appraisal case because the court was sitting in diversity jurisdiction); *see also Allstate Ins. Co. v. Suarez*, 833 So. 2d 762, 765 (Fla. 2002) (ruling Court must look to appraisal provision of insurance policy over FAC, "[w]hen an insurance contract is not ambiguous, it must be given effect as written.") (internal quotation omitted). Thus, as even Defendant acknowledged previously to this Court, Florida law applies to appraisal proceedings. [31]

### B.      ALL OF DEFENDANTS GROUNDS FOR VACATUR FAIL

"Section 682.13 of the Florida Statutes provides the grounds for vacating arbitration awards, but Florida state courts and federal courts have held that it also provides the grounds for vacating insurance appraisal awards." *Marlowe*, 2020 WL 736628 *2 (quotation omitted)). "Thus, in the absence of one of the five factors set forth in the statute, neither a trial court nor a district court of appeal has the authority to overturn the award." *Schurmacher Holding, Inc. v. Noriega*, 542 So. 2d 1327, 1328 (Fla. 1989). Defendant cites four enumerated grounds under section 682.13: (1) evidently partiality; (2) misconduct by an appraiser prejudicing the rights of Defendant; (3) an appraiser exceeded the appraiser's power; and (4) the Appraisal Award was procured by fraud and undue means. [32] Defendant also asserts a ground for vacatur not unenumerated in section 682.13—

---

[31]     In *Shores at Coco Plum Condo. Ass'n, Inc. v. Westchester Surplus Lines Ins. Co.*, Westchester moved to strike the insured's appraiser as impartial, citing as support *Verneus v. Axis Surplus Ins. Co.*, 2018 WL 3417905 (S.D. Fla. 2018), which relied on Florida law to interpret an appraisal provision and determine whether the appraiser appointed by the insured should be stricken prior to the start of the appraisal process. No. 18-cv-23910-COOKE/GOODMAN, 2019 WL 2223172, *2 (S.D. Fla. April 24, 2019) (J.D. Dickenson counsel for Westchester). This Court, ruling in favor of Westchester, also relied on *Verneus*. *See Shores*, 2018 WL 3417905 at *2 (applying Florida law to determine whether appraiser should be stricken). Judicial estoppel prevents a party from asserting a claim in a legal proceeding that is inconsistent with a claim taken by that party in a previous proceeding. *See New Hampshire v. Maine*, 532 U.S. 742 (2001).

[32]     (Renewed Mot. to Vacate [D.E. 46] at pp. 11–21.)

i.e., that the panel "so imperfectly executed [their powers] that a mutual, final and definite award upon the subject matter was not made."[33] Defendant fails to meet its burden of proof on all five grounds.

In addition to failing on an evidentiary basis, all grounds for vacatur were waived when Defendant failed to object on its knowledge of Mr. Pyka mistaken disclosure. *Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Smolchek*, 2012 WL 4056092 at *3 (S.D. Fla. 2012) (finding evident partiality was waived by not raising before entry of award); *see also Dadeland Square, Ltd. v. Gould*, 763 So. 2d 524, 527 (Fla. 3d DCA 2000) (holding moving party waived right to object because it had knowledge prior to entry of award). "The purpose of the waiver doctrine is to prevent a party that knows of possible bias from making a tactical decision to try its luck with a proceeding and keep a proverbial ace up its sleeve in case things go badly." *Merrill*, 2012 WL 4056092 * 3; *Bianchi v. Roadway Exp., Inc.*, 441 F. 3d 1278, 1286 (11th Cir. 2006). ("[W]e cannot accept that parties have a right to keep two strings in their bow—to seek victory before the tribunal and then, having lost, seek to overturn it for bias never before claimed.").

1.     **DEFENDANT FAILS ON BURDEN OF PROOF FOR EVIDENT PARTIALITY**

Defendant's first basis for vacatur is pursuant to section 682.13(1)(b)(1), which states the "court shall vacate an arbitration award if: (b) There was: 1. Evident partiality by an arbitrator appointed as a neutral arbitrator. . . ." § 682.13(1)(b), Fla. Stat. The burden is on the movant[34] to establish evident partiality "through credible evidence, giving rise to a reasonable impression of partiality that was direct, definite, and capable of demonstration, as distinct from a mere

---

[33]     (Renewed Mot. to Vacate [D.E. 46] at p. 16.)
[34]     "It is incumbent upon the party pursuing the motion to vacate to demonstrate bias or prejudice on the part of the arbitrator, and if that burden is not sustained the award will be affirmed." *Carol City Utilities, Inc.*, 201 So. 2d at 244.

appearance of bias that was remote, uncertain, and speculative." *Amalgamated Transit Union, Local 1579 v. City of Gainesville*, 264 So. 3d 375, 380 (Fla. 1st DCA 2019).[35] Defendant cites a number of cases where an appraiser had a financial interest in the outcome as a basis for vacatur.[36] However, all those cases deal with appraisers with an undisputed financial interest.[37] Here, all the sworn testimony proves no contingency existed. Mr. Pyka has repeatedly testified he never had a financial interest.[38] Plaintiff's corporate representative testified Plaintiff never authorized, approved, or in any way entered into or promised Mr. Pyka a contingent fee agreement.[39] Defendant draws several inferences and assumptions from the record, presenting them as factual support for evident partiality.[40]

---

[35]    When deciding if there is evident partiality, this Court should not look into the factual findings and legal conclusions of the appraisal panel but, rather, must limit the review to definite partiality shown by credible evidence. *See Amalgamated*, 264 So. 3d at 380.

[36]    (Renewed Mot. to Vacate [D.E. 46] at pp. 11–13.)

[37]    *See Commonwealth Coatings Corp. v. Continental Cas. Co.*, 393 U.S. 145 , 146 (1968) (holding neutral umpire in arbitration in Puerto Rico had extensive business with one party); *Univ. Commons-Urbana, Ltd. v. Univ. Constr. Inc.*, 304 F. 3d 1331, 1345 (11th Cir. 2002) (declining to rule on issue of evident partiality and remanding to Northern District of Alabama for evidentiary hearing on issue of impartiality; N.D. Ala. declining to vacate upon remand); *Gianelli Money Purchase Plan and Trust, ADM Inv. Servs., Inc.*, 146 F. 3d 1309, 1313 (11th Cir. 1998) (reversing finding of evident partiality because arbitrator "cannot be guilty of evident partiality absent actual knowledge of a real or potential conflict"); *Lifecare Int'l, Inc. v. CD Med., Inc.*, 68 F. 3d 429, 437 (11th Cir. 1995) (affirming denial of vacatur for evident partiality where it was alleged an arbitrator was not impartial because of prior "scheduling dispute" with the attorneys for one of the parties at arbitration); *Gaines Constr. Co. v. Carol City Utils., Inc.*, 164 So. 2d 270, 272 (Fla. 3d DCA 1963) (vacating arbitration award where arbitrator was "under domination and control of an officer" of party to arbitration); *Austin S. I, Ltd. v. Barton-Marlow Co.*, 799 F. Supp. 1135, 1142 (M.D. Fla. 1992) (denying motion to vacate arbitration award for evident partiality); *Verneus*, 2018 WL 3417905, at *7 (striking appraiser with financial interest in appraisal but noting the court was not ruling on whether appraiser's failure to disclose this information would support vacatur of appraisal award as opposed to striking appraiser pre-appraisal).

[38]    (*See supra* note 18.)

[39]    (*See supra* note 19.)

[40]    Defendant makes several allegations and presents them as evidence of evident partiality. (Renewed Mot. to Vacate [D.E. 46] at p. 13: (1) ("*Mr. Pyka refused to answer follow-up questions about his fee*"—Defendant fails to provide any record cite for this assertion and does not cite and legal authority stating the silence of an appraiser is evidence of partiality); (2) ("*Mr. Pyka even*

FARRELL PATEL JOMARRON LAW PLLC
ATTORNEYS AT LAW

Defendant's primary[41] basis for Mr. Pyka's evident partiality[42] is repeated conclusory statements

and inferences about Mr. Pyka's mistaken disclosure.[43] However, "the partiality of the neutral must

---

*admits that he will not seek payment until after this lawsuit is resolved*"—Defendant omits Mr. Pyka's statements that it is his regular practice to wait until he is "done with the claim" and that it "[d]oesn't matter if [the insured] gets paid or not." (Pyka Dep. Tr., Ex. B at 66:24; 67:4; 67:8); and (3) ("*indications that Mr. Pyka was influenced by Biscayne Beach's public adjuster by referring to the public adjuster's estimate in preparing his own estimate*"—Courts have acknowledged an appointed appraiser will have interaction with the party that appointed him/her, *see Marlowe*, 2020 WL 736628 at *2, and, notably, Mr. Lewis, Defendant's appraiser, acknowledged Defendant requested a copy of his entire file at the end of the appraisal, which he stated only happens in his guesstimate 20% of the time, and also testified he was in communication with Defendant but cannot remember when and that he gives his insurance company clients updates during the appraisal (Lewis Dep. Tr., Ex. C at 56:12–57:14; p. 57:15 – 19.).)

[41]     Defendant also states there are "indications that Mr. Pyka was influenced by Biscayne Beach's public adjuster." (Renewed Mot. to Vacate [D.E.] at p. 13.) In support of this statement, Defendant hypothesizes "that Mr. Pyka prepared his estimate using a data file provided to him by [Plaintiff's public adjuster]." (Renewed Mot. to Vacate [D.E.] at p. 13.) It is not unusual for appraisers to look at the estimates and materials prepared by the adjusters who worked for the parties prior to the parties entering into appraisal. *Marlowe*, 2020 WL 736628 *2 (finding movant did not show misconduct sufficient for vacatur where appraiser, described as a "puppet" of the opposing party by movant, relied on the estimate prepared by the adjuster). "[A]bsent overt corruption or misconduct in the arbitration itself, . . . no arbitrator appointed by a party may be challenged on the ground of his relationship to that party." *Lee v. Marcus*, 396 So. 2d 208, 209 (Fla. 3d DCA 1981) (finding no evident partiality where attorney and arbitrator shared office space).

[42]     Some courts hold, vacatur for evident partiality only applies to a showing of the evident partiality of the neutral umpire. *See Marlowe*, 2020 WL 736628 *2 (denying the motion to vacate "because § 682.13(1)(b) does not require an appraiser remain impartial, but instead governs the Umpire.") (citation omitted); *see also* section 682.041(3), Fla. Stat. (allowing vacatur only if party timely objected to disclosed financial interest).

[43]     Even if Mr. Pyka had a contingent fee agreement, which he did not, it would not be conclusive evidence of evidentiary partiality. *State Farm Fla. Ins. Co. v. Sanders*, 2020 WL 1870776 at 2 (Fla. 3d DCA, April 15, 2020) (recognizing on certiorari controlling law in Florida's Third DCA to allow for impartial appraisers to have a contingent fee agreement, while suggesting a different outcome if it were a plenary appeal) (citing *Galvis v. Allstate Ins. Co.*, 721 So. 2d 421 (Fla. 3d DCA 1998), and *Rios v. Tri-State Ins. Co.*, 714 So. 2d 547, 550 (Fla. 3d DCA 1998)); *see also Bravo v. U.S.*, 532 F. 3d 1154, 1164 (11th Cir. 2008) ("A Court sitting in diversity jurisdiction must "look to the decisions of the Florida appellate court that would have had jurisdiction over an appeal in this case had it been filed in state court"— i.e., the Third District Court of Appeal here.)

    This Court previously ruled "an appraiser with a financial interest in the outcome of an appraisal is not impartial." *Shores*, 2019 WL 2223172 at *2. This Court's reasoning in *Shores* is sound; however, the procedural posture in *Shores* was materially different than here. Here, we are post appraisal award, in *Shores*, the Court addressed the issue at the *selection* of the appraiser

FARRELL PATEL JOMARRON LAW PLLC

ATTORNEYS AT LAW

be obvious and plain and must be shown to have unfairly affected the rights of the complaining

party." *Brandon Jones Sandall Zeide Kohn Chalal & Musso, P.A. v. Beasley & Hauser, P.A.*, 925

So. 2d 1142, 1145 (Fla. 4th DCA 2006). And, other than proving Mr. Pyka has ineffective business

records keeping practices, none of the record evidence directly, definitely, or demonstrably shows

the plain and obvious partiality of Mr. Pyka. As Mr. Pyka testified, he was reviewing hundreds of

appraisal files[44] that he was solely responsible for and, admittedly, did not keep very well

organized.[45] It was during these reviews of his files that Mr. Pyka testified he sent the mistaken

disclosure.[46]

      As an example of how mistakes like this one can happen, we can turn to another event in

this same case. Defendant mistakenly disclosed during Mr. Lewis' deposition[47] that it produced

Mr. Lewis' file to Plaintiff months ago.[48] Defendant did not produce the file but mistakenly said

he did in an "off the cuff" response to Plaintiff's request.[49] Defendant's counsel explained, "In that

moment, I erroneously thought that Biscayne Beach had served discovery requests. As it turns out,

no discovery requests were ever served."[50] It is a fact of life that we all make mistakes, even if the

matter is important, like a deposition or appraisal. Defendant made a mistake,[51] so did Mr. Pyka.[52]

---

phase. *Verneus*, 2018 WL 3417905, at *7 (recognizing there is a lower bar for the court's examination of partiality "when the Court is addressing only the *selection* of an appraiser, as opposed to an effort to vacate an arbitration award").

[44]    (*See supra* note 4.)

[45]    (*See supra* notes 4–9.)

[46]    *See Suarez*, 833 So. 2d at 765 (holding appraisal is not a "formal arbitration hearing").

[47]    (Dickenson Mistake E-Mail Ex. H.)

[48]    (Dickenson Mistake E-Mail Ex. H, June 9, 2021 (explaining he made a mistaken misrepresentation when he told Plaintiff's counsel he had produced deponent's file months ago.)

[49]    (Dickenson Mistake E-mail, Ex. H.)

[50]    (Dickenson Mistake E-mail, Ex. H.)

[51]    (Dickenson Mistake E-mail, Ex. H.)

[52]    Defendant also fails to argue Mr. Pyka's purported contingency agreement biased or prejudiced the Award; rather, Defendant argues it "need not [] show[] that bias influenced [the arbitrator]'s judgment . . . ." (Renewed Mot. to Vacate [D.E. 46] at p.12 (quoting *Gaines Constr.*

FARRELL PATEL JOMARRON LAW PLLC
ATTORNEYS AT LAW

## 2.    <u>NO EVIDENCE OF MISCONDUCT OR PREJUDICE</u>

Defendant's second ground for vacating the Appraisal Award relies on section 682.13(1)(b)(3) that there was allegedly "Misconduct by an arbitrator prejudicing the rights of a party to the arbitration proceeding . . . ." Florida courts have defined misconduct as when "arbitration panels . . . in the course of their deliberations, go outside the evidence presented to them." *Int'l Med. Centers, Inc. v. Sabates, M.D.*, 498 So. 2d 1292, 1293 (Fla. 3d DCA 1986) (finding arbitrator, who went outside the arbitration to verify matters previously presented to the panel, may have acted improperly but declined to vacate because movant "failed to show either prejudice from arbitrator misconduct or overreaching of arbitrator power").

Defendant's allegations of misconduct, just as its allegations of evidentiary partiality, consist of: (1) Mr. Pyka's mistaken disclosure; and (2) Mr. Pyka's purported interactions with Plaintiff's adjuster.[53] Like the basis for evident partiality, all of the cases cited to support

---

*Co. v. Carol City Utilities, Inc.*, 164 So. 2d 270, 272 (Fla. 3d DCA 1963)).) The distinction between arbitration and appraisal is meaningful here because arbitrators are treated as judicial officers and "every safeguard possible should be thrown about the proceedings to insure the utmost fairness and impartiality of those charged with the determination of the rights of the parties." *Carol City Utilities, Inc.*, 164 So. 2d at 272 (quoting *Cassara v. Wofford*, 55 So. 2d 102, 105 (Fla. 1951)). Therefore, the cases Defendant cites that do not require a showing of bias or prejudice arise from the heightened concerns for protecting an **arbitration** panel's integrity from possibility of impartiality. *Carol City Utilities, Inc.*, 164 So. 2d at 272. Defendant cannot show bias or prejudice because the appraisal panel signed and approved the appraisal awards and both Mr. Lewis and Mr. Womack have stated their approval of the appraisal awards was not biased or prejudiced by Mr. Pyka. *Winfrey v. Simmons Foods, Inc.*, 495 F. 3d 549, 552–53 (8th Cir. 2007). In *Winfrey*, the Eighth Circuit denied the motion to vacate for evident partiality of one of the three (3) arbitrators where the arbitration award was agreed to by all three (3) arbitrators. 495 F. 3d at 552–53 ("[movant] has the burden under our case law to show that this partiality had a prejudicial impact on the arbitration award. *See Delta Mine*, 280 F. 3d at 821. . . [Movant] presents no evidence indicating that [the arbitrator]'s partiality deceived or misled the other two arbitrators, prejudiced [movant]'s ability to present its case, or in any way affected the award to which the arbitrators agreed unanimously. The mere possibility of prejudice is insufficient to justify setting aside the award.")

[53]    (Renewed Mot. to Vacate [D.E. 46] at p. 15.)

FARRELL PATEL JOMARRON LAW PLLC
ATTORNEYS AT LAW

misconduct involve appraisers with an undisputed financial interest in the appraisal.[54] Defendant has not cited one case where, as is the case here, the financial interest of an appraiser was disputed.[55] As Defendant's basis for alleging misconduct is the same for alleging evident partiality, this basis should be denied for the same reasons.[56] Further, after making the purely conclusory statement that "Mr. Pyka was not impartial," Defendant makes yet another legal conclusion, unsupported by law or fact, that Mr. Pyka's "very participation in the appraisal was prejudicial to Westchester."[57] By concluding Mr. Pyka's "very participation"[58] was in and of itself prejudice, Defendant merged the prejudice prong into the misconduct prong.

Finally, Defendant alleges it was denied a fair appraisal "because the panel wrote the Appraisal Award in a manner to maximize the amount of money Biscayne Beach can obtain from Westchester, and considered legal issues in the process."[59] In support of these conclusory statements, Defendant only cites to Mr. Womack's deposition wherein Mr. Womack discussed the appraisal panel's figuring of one specific part of the appraisal, Law & Ordinance, which the

---

[54]     *See Shores*, 2019 WL 2223172 at *2 (relying on undisputed fact that appraiser had financial interest); *State Farm Fla. Ins. Co. v. Crispin*, 290 So. 3d 150, 153 (Fla. 5th DCA 2020) (same); *State Farm Fla. Ins. Co. v. Valenti*, 285 So. 3d 958, 960 (Fla. 4th DCA 2019) (same); *Verneus*, 2018 WL 3417905 at *6 (same); *Landmark Am. Ins. Co. v. H. Anton Richardt, DDS, PA*, 2019 WL 2462865 at *3 (M.D. Fla. 2019) (same); *Shree Hari Hotels, LLC v. Society Ins.*, 2013 WL 4777212 at *1–3 (S.D. Ind. 2013) (same); *Colo. Hsp. Servs., Inc. v. Owners Ins. Co.*, 2015 WL 4245821, at *3 (D. Colo. 2015) (same).

[55]     (Renewed Mot. to Vacate [D.E. 46].)

[56]     (*See supra* C.1.)

[57]     (Renewed Mot. to Vacate [D.E. 46] at p. 15.)

[58]     Defendant's only citation in support of its conclusory statements regarding prejudice is *Move, Inc. v. Citigroup Global Mkts., Inc.*, granting Citigroup's motion to vacate an **arbitration** award where Move's arbitrator falsified his credentials. 840 F. 3d 1152, 1158 (9th Cir. 2016). This is vastly different from the present situation. Mr. Pyka clearly testified he never had a contingent fee agreement. (*See supra* notes 4–9.) The other two members also testified they were not biased or prejudiced by Mr. Pyka. (*See supra* note 23.) And the only potentially contradicting evidence is an unsworn e-mail and an unsigned retainer agreement, which Mr. Pyka testified was mistakenly done and provided an explanation. (*See supra* notes 4–9.)

[59]     (Renewed Mot. to Vacate [D.E. 46] at p. 15.)

FARRELL PATEL JOMARRON LAW PLLC
ATTORNEYS AT LAW

Appraisal Award clearly shows on its face was not appraised.[60] Defendant is attempting to disguise

an impermissible challenge to the substance and amount of the Appraisal Award as grounds for

vacatur.[61] Defendant's attacks on the form of the Award also ignores the itemization breakdown

included with the Appraisal Award, despite no requirement existing in the Policy's appraisal

clause.[62] Defendant's second ground for vacatur fails.

### 3.      NONE OF THE APPRAISERS EXCEEDED THEIR POWERS

Defendant's third ground for vacatur is based on section 682.13(1)(d), which allows

vacatur when "[a]n arbitrator exceeded the arbitrator's powers." "The Florida Supreme Court has

held that an arbitrator exceeds his or her power when he or she (1) goes beyond the operative

documents or the authority granted by the parties, and (2) decides issues that are not pertinent to

the resolution of the issue submitted to the arbitration." *Villas at the Hammocks v. Empire Indem.*

*Ins. Co.*, 2011 WL 13223726 at *2 (S.D. Fla. 2011) (citation omitted) (applying Florida law on

---

[60]      (Renewed Mot. to Vacate [D.E. 46] at p. 15 (citing Womack Dep. Tr., Ex. D at 60:5–61:6).)
[61]      "[O]nce an award has been made, the only defenses that remain for the insurer to assert are lack of coverage . . . , or violation of one of the standard policy conditions (fraud, lack of notice, failure to cooperate, etc.) . . . ." *Three Palms Pointe, Inc. v. State Farm Fire & Cas. Co.*, 362 F. 3d 1317, 1319 (11th Cir. 2004); *Tropical Paradise Resorts, LLC v. Claredon Am. Ins. Co.*, No. 08-cv-60254-COOKE, 2008 WL 3889577, at *3 (S.D. Fla. Aug. 20, 2008) (following *Three Palms Muckenfuss v. Hanover Ins. Co.*, 2007 WL 1174098 at *3 (M.D. Fla. 2007)). "'[H]aving admitted that the loss at issue is covered' [an insurance company] cannot 'quibble' with the amount of that loss because, '[u]nder applicable Eleventh Circuit precedent interpreting Florida law—and pursuant to the agreement of the parties—the appraisal is binding.'" *Cooperman v. Fireman's Fund Ins. Co.*, 2011 WL 13298736 *3 (M.D. Fla. 2011) (quoting *Muckenfuss*). While some Florida's federal district courts have refused to follow *Three Palms*, the Eleventh Circuit's opinion in *Three Palms* remains controlling precedent. *Cf. Florida Gaming Corp. v. Affiliated FM Ins. Co.*, 2008 WL 11407210 (S.D. Fla. 2008) (J. Ungaro); *but see* Rushton v. Scottsdale Ins. Co., 2019 WL 7937934 (S.D. Fla. 2019) (J. Ungaro) (holding *Three Palms* controls and apparently receding from its prior opinion in *Fla. Gaming*); *Tropical Paradise*, 2008 WL 3889577 at *3 (J. Cooke) (following *Three Palms*).
[62]      (Appraisal Award, Comp. Ex. E at p. 27.)

FARRELL PATEL JOMARRON LAW PLLC
ATTORNEYS AT LAW

arbitration to deny motion to vacate appraisal awards because movant did not show how the "methodology of repair" was "pertinent to the resolution of the issue submitted to arbitration").

Defendant alleges Mr. Pyka was without power to act as an appraiser because he was, as Defendant concludes, not impartial.[63] Defendant concludes the very issue it is asking the court to decide as the basis for their evident partiality argument to use it as a basis to then argue Mr. Pyka exceeded his powers. Essentially, Defendant bootstrapped the argument that Mr. Pyka had a financial interest as a separate ground for vacatur for exceeding powers.[64] For the same reasons that Defendant's grounds for evident partiality fail, the argument that Mr. Pyka exceeded his powers because he was allegedly not impartial also fail. (*See supra* Section C.)

## 4.    THE PANEL DID NOT IMPERFECTLY EXECUTE THEIR POWERS; THIS IS NOT A PROPER GROUND FOR VACATUR UNDER SECTION 682.13, FLA. STAT.

Defendant's fourth argument seeks vacatur on the ground that the panel "so imperfectly executed [their powers] that a mutual, final, and definite award upon the subject matter was not made."[65] "[A]rbitrators may exceed their power within the meaning of § 10(a)(4) if they fail to comply with mutually agreed-upon contractual provisions in an agreement to arbitrate." *Cat Charter, LLC v. Schurtenberger*, 646 F. 3d 836, 843 (11th Cir. 2011) (reversing vacatur under 10(a)(4) because the "parties received precisely what they bargained for. . . To vacate the Award . . . would insufficiently respect the value of arbitration and . . . [so] the Award should be confirmed and this controversy should be put to rest once and for all.").[66] This ground for vacatur is not

---

[63]    (Renewed Mot. to Vacate [D.E. 46] at p. 15.)

[64]    (*Compare* Renewed Mot. to Vacate [D. E. 46] at pp. 11–13 (**arguing** Mr. Pyka is not impartial and so the Appraisal Award should be vacated for evident partiality) *with* p. 16 (**concluding** "Mr. Pyka was not an 'impartial' appraiser within the meaning of the Policy.").)

[65]    (Renewed Mot. to Vacate [D.E. 46] at p.16 (quoting 9 U.S.C. § 10(a)(4)).)

[66]    *See also Cat Charger*, 646 F. 3d at 846 (holding that "arbitrators do not act as junior varsity trial courts where subsequent appellate review is readily available to the losing party") (citation and quote omitted).

FARRELL PATEL JOMARRON LAW PLLC
ATTORNEYS AT LAW

enumerated in section 682.13 and, therefore, should not be considered. *Soler v Secondary Holdings, Inc.*, 832 So. 2d 893, 895 (Fla. 3d DCA 2002) ("Section 682.13(1), Florida Statutes, sets forth the only grounds upon which an award of an Arbitration must be vacated.") If the Court considers this ground for vacatur, it is baseless as the appraisers and umpire complied with all contractual provisions regulating appraisal.

The Policy is the only agreement entered into by the Parties that contains any provision relating to appraisal and, so, the Appraisal Provision contains the only[67] terms controlling the form of the appraisal awards.[68] The Appraisal Provision of the Policy does not specify a specific form of the appraisal awards.[69] "[I]n a typical arbitration where no specific form of award is requested, arbitrators may provide a 'standard award' and simply announce the result." *Cat Charger*, 646 F. 3d at 844. Therefore, the panel has no obligation to explain their awards because the Policy did not require it, and there is no basis for vacatur due to the form of the appraisal awards. *See Calzadilla v. Scottsdale Ins. Co.*, No. 18-cv-25424-UNGARO/MCALILEY, 2019 WL 2245518, at *4 (S.D. Fla. Apr. 10, 2019) (finding "the Policy does not provide for delineation of the appraisal award" as basis for ruling against request for delineation, even though "an itemized appraisal may be beneficial" because the "Court is bound to enforce the Policy as it is written").

### 5.  DEFENDANT CANNOT DEMAND VACATUR ON THE BASIS OF FRAUD

---

[67]  Defendant cites to the Declaration of Appraiser that was signed by the members of the appraisal panel and the statements therein where the appraisers and umpire agreed to "make a true, just and conscientious award of the same." (Renewed Mot. to Vacate [D.E. 46] at p. 16.) However, neither Defendant nor Plaintiff are parties to these declarations and the fact that the Policy contains the only language controlling appraisal is reinforced by the parties' own stipulation wherein both Plaintiff and Defendant stated "if the appraisal provisions of a contract of insurance have been properly invoked, further proceedings should be conducted in accord with those provisions." Stipulation Abating Lawsuit Pending Appraisal [D.E. 9] (citing *Suarez*, 833 So. 2d at 765, and relying on Florida law).
[68]  (Policy, Ex. A at p. 10.)
[69]  (Policy, Ex. A at p. 10.)

FARRELL PATEL JOMARRON LAW PLLC
ATTORNEYS AT LAW

"A party who alleges that an arbitration award was procured by corruption, fraud, or other undue means must (1) establish the fraud by clear and convincing evidence and demonstrate that the fraud (2) was not discoverable by the exercise of due diligence before or during the arbitration hearing and (3) was materially related to an issue in the arbitration. *Davenport v. Dimitrijevic*, 857 So. 2d 957, 961 (Fla. 4th DCA 2003). To prove fraud,[70] Defendant must provide clear and convincing evidence of: "(1) a false statement concerning a specific material fact; (2) a showing that the representer knew, or should have known, that the representation was false; (3) an intention that the representation induce another to act on it; and (4) consequent injury to the party acting in justifiable reliance on the representation." *BGW Design Limited, Inc. v. Service Am. Corp.*, 2011 WL 13220382 *6 (S.D. Fla. 2011) (internal quotations omitted). Defendant bears the burden of establishing each element of fraud by clear and convincing evidence. *See Davenport*, 857 So. 2d at 961. "To set aside an arbitration award, section 682.13(1)(a) requires an even stronger showing of fraud than rule 1.540(b)(3)." *Id.* at 963.

Defendant alleges a fraud consisting of a "long, calculated scheme by Biscayne Beach to conceal [Mr. Pyka's] improper fee agreement."[71] The evidence offered by Defendant of this purported scheme consists of: (1) prior unsworn statements made by Mr. Pyka inconsistent with his sworn statements; (2) allegations Mr. Pyka fabricated a time log he produced at deposition after explaining it was incomplete; and (3) allegations Plaintiff worked with Mr. Pyka to conceal Mr. Pyka's fee agreement. Mr. Pyka's statements are not inconsistent. Mr. Pyka admits to making a

---

[70]     A court sitting in diversity looks to Florida law for the elements of fraud. *Lacy v. BP, PLC*, No. 11-cv-21855-COOKE 2015 WL 3952593, *4 (S.D. Fla. June 29, 2015) (ruling plaintiff's complaint did not meet the procedural Rule 9 heightened pleading standard required to show the four elements of fraud under Florida substantive law).
[71]     (Renewed Mot. to Vacate [D.E. 46] at p. 21.)

FARRELL PATEL JOMARRON LAW PLLC
ATTORNEYS AT LAW

mistake when making the disclosure and confirmed, as did Plaintiff, that they had an agreement to perform the appraisal services on hourly basis not contingent on the outcome of the appraisal.

      Defendant focuses largely on whether the time recorded in the time log produced by Mr. Pyka during the middle of his deposition was entered by Mr. Pyka contemporaneously.[72] Defendant, however, never asked Mr. Pyka, his definition of contemporaneous but, rather, only asked Mr. Pyka if the statement in paragraph seven (7) of his affidavit, wherein Mr. Pyka states he "records [his] time on a contemporaneous basis" is true, which Mr. Pyka maintained was true.[73] Defendant does not ask another question about Mr. Pyka's understanding of contemporaneous at any time during the deposition.[74] Defendant also makes an issue of the fact that there are no expenses[75] included in the time log despite Mr. Pyka stating he keeps records of expenses in his affidavit.[76] However, Mr. Pyka also testified, as he produced the time log to Defendant, that his time log was not complete, that he was still working on it, and that he had not yet created his invoice.[77]

      Defendant attaches an "expert report"[78] to support its baseless accusations that Mr. Pyka fabricated the time log. Mr. Pyka explains the time log is not complete[79] but was eager to cooperate

---

[72]     (Renewed Mot. to Vacate [D.E. 46] at pp. 18 – 20.)

[73]     (Pyka Dep. Tr., Ex. B at 82:5–7.)

[74]     It appears Defendant's attack on the language of Mr. Pyka's Affidavit was an afterthought for another attack against the Appraisal Award in an effort to persuade this Court.

[75]     (Renewed Mot. to Vacate [D.E. 46] at p. 19.)

[76]     (Pyka Tr., Ex. B at ¶ 7 ("I recorded my time . . . and kept records of my time.").)

[77]     (Pyka Dep. Tr., Ex. B at 62:3–6.)

[78]     The expert report offered by Defendant is very similar to the one described in *Cendan v. Trujillo* where the Court explained the report "failed to bridge the analytical gap between the data and the opinion offered." No. 16-cv-21775-WILLIAMS/TORRES, 2020 WL 6149800, at *4 (S.D. Fla. Oct. 20, 2020). The *Cendan* Court excluded portions of the expert report because it, similarly to Defendant's expert report, relied "upon theoretical speculations, unsupported assumptions, and conclusory opinions that have no connection to the facts of a case." *Id.*

[79]     (Pyka Dep. Tr., Ex. B at 62:5–6 ("I didn't bill any hours, I'm still working on my time log.")

FARRELL PATEL JOMARRON LAW PLLC
ATTORNEYS AT LAW

and provide his incomplete document during the deposition.[80] Mr. Pyka stated that he had recently

added time to the time log[81] and could not remember when the time log was created. Defendant

then asks the court to make the inference and conclusion that the attempted fabrication should be

imputed to Plaintiff through impermissible circular logic.[82]

There is nothing improper or nefarious about Plaintiff's interactions with Mr. Pyka.

Defendant misconstrues the level of impartiality required of an appraiser appointed by a party.[83]

Defendant also misconstrues the lack of paper trail between Plaintiff and Mr. Pyka and presents it

as further evidence of fraud.[84] This "evidence" blatantly ignores Mr. Pyka's testimony that he

conducts his business over the phone[85] and that Plaintiff's counsel called Mr. Pyka to reject any

contingency fee agreement.[86] Further, even Defendant's appraiser acknowledges he typically

interacts with the party who appoints him during the course of the appraisal.[87]

Defendant's allegations and purported evidence of fraud does not "clearly and concisely

set out a case for fraud" under section 682.13(1)(a). *Davenport*, 857 So. 2d at 963 (denying motion

to vacate for fraud where movant merely offered legal conclusions rather than showing the

---

[80]     (Pyka Dep. Tr., Ex. B at 57:23–58:6.)

[81]     (Pyka Dep. Tr., Ex. B at 82:5–7; 63:2–5.)

[82]     (*Compare* Renewed Mot. to Vacate [D.E. 46] at p. 18 (arguing the alleged fabrications in Mr. Pyka's time log should be "imputed to Biscayne Beach because Mr. Pyka and Biscayne Beach together were parties to an improper fee agreement") *with* p. 15 (arguing the "fabricated time log is evidence of a long-term plan between Biscayne Beach and Mr. Pyka to conceal their true fee agreement").)

[83] "As the very nature of the widely-employed three-person arbitration panel itself implies, the arbitrators designated by the parties are not intended to be entirely disinterested or impartial. *Lee*, 396 So. 2d at 209.

[84]     (Renewed Mot. to Vacate [D.E. 46] at p. 20; n. 89.)

[85]     (Pyka Dep. Tr., Ex. B at 13:12–13 ("I do phone calls. That's about it."); 14:5–10 (responding to question as to how he communicated with Plaintiff, Mr. Pyka stated "It would be phone calls. . . just phone calls.").)

[86]     (*See supra* Section I. at ¶ 5.)

[87]     (*See supra* note 42.)

FARRELL PATEL JOMARRON LAW PLLC

ATTORNEYS AT LAW

elements of fraud). Reliance is an essential element for establishing fraud under Florida law. *Irwin v. Miami-Dade County Public Schools*, No. 06-cv-23029-COOKE, 2009 WL 465033, *8 (S.D. Fla. Feb, 24, 2009) (ruling because plaintiff "cannot satisfy the essential element of reliance, [plaintiff] fails to state a fraud claim"). Defendant does not allege any reliance, instead citing to *Bonar v. Dean Witter Reynolds, Inc.*, 835 F. 2d 1378, 1383 (11th Cir. 1988), for the proposition that Defendant need not show the outcome of the appraisal would have been different.[88] However, this argument is misplaced.[89] Simply put, Defendant cannot avoid the essential elements of establishing fraud under Florida law by citing to *Bonar*; some reliance or effect upon Mr. Womack or Mr. Lewis must be established. *See Irwin*, 2009 WL 465033, *8. Defendant offered no factual support for such reliance or effect.[90] Further, both Mr. Lewis and Mr. Womack stated that nothing Mr. Pyka did prevented either from entering an impartial Appraisal Award.[91]

Defendant fails to prove it did not have knowledge of Mr. Pyka's February 3, 2020, e-mail prior to the issuance of the appraisal awards. This is an essential element to prove fraud under *Bonar*. 835 F. 2d at 1383 (knowledge gives rise to duty to exercise due diligence to investigate). Defendant has not provided any evidence for the Court's consideration that it lacked knowledge of Mr. Pyka's disclosure before entry of Appraisal Award and, therefore, has not met its burden to establish all the essential elements of fraud. *See Floridians for Solar Choice, Inc. v. Paparella*,

---

[88]   (Renewed Mot. to Vacate [D.E. 46] at p.18.)

[89]   *Bonar's* proposition arises from cases ruling on fraud on the court under Rule 60(b)(3), Federal Rules of Civil Procedure. 835 F. 2d at 1383 (citing *Wilson v. Thompson*, 638 F. 2d 801, 804 (5th Cir. 1981) ("a party moving under Rule 60(b)(3) may prevail without showing that the alleged fraud affected the outcome of the prior trial.")). An appraisal is not a proceeding such as an arbitration or trial, which the law provides heightened protection against fraud to protect the integrity of such proceedings. *See Rozier*, 573 F. 2d at 1346 ("the policy of deterring [fraud] which assault[s] the fairness and integrity of litigation must be accorded precedence over the policy of putting an end to litigation."). Therefore, *Bonar* is not controlling over appraisal.

[90]   (Renewed Mot. to Vacate [D.E. 46] at pp.18–21.)

[91]   (*See supra* Section I ¶ 12.)

FARRELL PATEL JOMARRON LAW PLLC
ATTORNEYS AT LAW

802 Fed. App'x. 519, 523 n. 1 (11th Cir. 2020) (holding movant alleging fraud did not meet burden because it did not satisfy the requirement that the alleged fraud was undiscoverable through the exercise of due diligence. . .").

## C.   DEFENDANT WAIVED ALL GROUNDS FOR VACATUR BY NOT ACTING ON ITS KNOWLEDGE PRIOR TO ENTRY OF THE APPRAISAL AWARDS

"Where the bias is apparent enough [and there is no timely objection], waiver will occur." *See Bianchi*, 441 F. 3d at 1285. In ruling that Bianchi had waived his bias argument by not objecting timely and before the determination of the panel, the Eleventh Circuit rejected the "full knowledge of the facts" approach noting "[i]f merely adding additional facts to a bias claim were enough to avoid waiver, then waiver could be easily avoidable." *Bianchi*, 441 F. 3d at 1285.

The record and the Renewed Motion to Vacate show Defendant had knowledge[92] of Mr. Pyka's February 3, 2020, e-mail disclosure prior to issuance of the Appraisal Award on March 10–12, 2020.[93] Counsel for Westchester has confirmed Westchester "has never taken the position it was not on notice of Mr. Pyka's February 3, 2020, disclosure at the time the Appraisal Award was executed."[94] Any objection Defendant had to the Appraisal Award based on Mr. Pyka's disclosure was waived. *Dadeland Square, Ltd. v. Gould*, 763 So. 2d 524, 527 (Fla. 3d DCA 2000) (holding

---

[92]     It is inconsequential whether Mr. Lewis communicated the information about Mr. Pyka to Defendant or Defendant's attorneys "since knowledge of an agent is imputed to its principal." *Smolchek*, 2012 WL 4055092, at *2 (citation omitted).
[93]     (Lewis Tr. at 56:12–14 (Lewis stating he may have informed Defendant of Pyka's February 3, 2020 email); 59:4–10 (stating there is a possibility he told Defendant, prior to entry of the Appraisal Award, of Mr. Pyka stating he had a contingency fee agreement); 60:21 61:8 (stating it is possible he advised Defendant's counsel that Mr. Pyka claimed he had contingency fee agreement); 63:20–23 (again stating he may have told Defendant Mr. Pyka claimed to have contingency fee agreement).); *see also supra* Section B.5. (explaining Defendant has burden of affirmatively establishing the fraud alleged in the Renewed Motion to Vacate was not discoverable prior to entry of the Appraisal Award yet fails to make even the allegation, let alone evidentiary showing, that Defendant did not have knowledge of Mr. Pyka's February 3, 2020, e-mail prior to entry of the Appraisal Award).)
[94]     (Dickenson Mistake E-Mail, Ex. H.)

FARRELL PATEL JOMARRON LAW PLLC
ATTORNEYS AT LAW

moving party waived right to object to arbitrator when put on notice prior to award but failed to object before entry of the award).

Dated June 11, 2021.

Respectfully submitted,

**DORTA LAW**
*Counsel for Plaintiff*
334 Minorca Avenue
Coral Gables, FL 33134
Telephone: 305-441-2299
Telecopier: 305-441-8849
Primary e-mail: grd@dortalaw.com
2nd e-mail: mrd@dortalaw.com
3rd e-mail: jgonzalez@dortalaw.com

By: /s/ *Gonzalo R. Dorta*
     GONZALO R. DORTA
     Florida Bar No. 650269
     MATIAS R. DORTA
     Florida Bar No. 770817

**FARRELL PATEL**
**JOMARRON LAW PLLC**
*Counsel for Plaintiff*
4300 Biscayne Boulevard, Suite 305
Miami, Florida 33137
Telephone: (305) 717-7530
Facsimile: (305) 717-7539
Primary e-mail: eservice@justice360.com
2nd e-mail: jjomarron@justice360.com
3rd e-mail: wmccaughan@justice360.com

By: /s/ *Jesmany Jomarron*
     Jesmany Jomarron, Esq.
     Florida Bar No. 69165
     William P. McCaughan Jr., Esq.
     Florida Bar No. 41573

## CERTIFICATE OF SERVICE

WE HEREBY CERTIFY that a true and correct copy hereof, was served on June 11, 2021, via CM/ECF upon John David Dickenson, jdickenson@cozen.com, and Chad A. Pasternack, cpasternack@cozen.com of Cozen O'Connor, One North Clematis Street, Suite 510, West Palm Beach, Florida 33401.

Respectfully submitted,

**DORTA LAW**
*Counsel for Plaintiff*

By: /s/ *Gonzalo R. Dorta*
     GONZALO R. DORTA
     Florida Bar No. 650269
     MATIAS R. DORTA
     Florida Bar No. 770817

**FARRELL PATEL**
**JOMARRON LAW PLLC**
*Counsel for Plaintiff*

By: /s/ *Jesmany Jomarron*
     Jesmany Jomarron, Esq.
     Florida Bar No. 69165
     William P. McCaughan Jr., Esq.
     Florida Bar No. 41573