UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 18-civ-23105-Cooke/Goodman

BISCAYNE BEACH CLUB
CONDOMINIUM ASSOCIATION, INC.,

       Plaintiff,

v.

WESTCHESTER SURPLUS LINES
INSURANCE COMPANY,

       Defendant.

_____/

## DEFENDANT'S REPLY IN SUPPORT OF ITS RENEWED MOTION TO VACATE APPRAISAL AWARDS

Defendant, Westchester Surplus Lines Insurance Company ("Westchester"), files this Reply in Support of its Renewed Motion to Vacate Appraisal Awards ("Motion to Vacate") [ECF No. 46], and states as follows:

Biscayne Beach focuses only on the objective question—whether Mr. Pyka was in fact compensated on a contingent fee basis. Mr. Pyka admitted to offering to work on a contingent fee basis, he advised the panel he has a financial interest in the appraisal award, and halfway through the appraisal, he drafted two contingent fee agreements. Biscayne Beach ignores the subjective question—it is undisputed that Mr. Pyka thought he had a contingent fee in August 2019 and from February 3, 2020 until Westchester filed a motion to vacate the appraisal awards. If at any time, Mr. Pyka thought he had a financial interest in the award, or sought one, the risk of bias is the same as if he in fact had one.

Appraisal should be a simple, fair, and honest process. Westchester should not have needed discovery to find out that Mr. Pyka drafted and transmitted two contingent fee agreements. Nor should Westchester have needed discovery to learn that Mr. Pyka does not plan on asking for payment until this lawsuit is resolved. Biscayne Beach emphasizes that disputed facts preclude vacatur, but the only dispute is which of Mr. Pyka's statements were true, and people who are honest and impartial do not make inconsistent sworn statements or fabricate documents. The contractual appraisal process simply does not work when approached this way.

Additionally, Biscayne Beach's Response should be stricken because its legal argument is presented primarily through lengthy, difficult to follow, substantive footnotes designed to circumvent the page limit, which it nonetheless exceeds by a full page.[1] Local Rule 7.1(c).

## I.    Factual Background

1.    The Biscayne Beach Rule 30(b)(6) Deposition is not probative evidence of Biscayne Beach's fee agreement with Mr. Pyka. F.R.E. 401, 403. Testimony of a corporate representative should only be considered "when the corporate representative expressly verifies that the matters stated therein are based on his personal knowledge gained through review of

---

[1] While the rules "do not per se prohibit … excessively long single-spaced footnotes …, these practices are clearly an attempt to evade the intent of the page limitations …." *A.R. v. Dudek*, No. 12-60460-civ, 2016 WL 3753706, at *1 (S.D. Fla. Apr. 8, 2016); *Morgan v. ACE Am. Ins. Co.*, No. 3:16-cv-705,  2016 WL 9211667 (M.D. Fla. Sept. 7, 2016) (striking overly footnoted motions).

LEGAL\52812152\1

business records." *Cargo Airport Servs. USA, LLC v. Transcarga Int'l Airways, C.A., Inc.*, 17-cv-20768-civ-Moreno, 2017 WL 4898292, at *2 (S.D. Fla. Oct. 27, 2017). The witness admittedly testified as instructed by Biscayne Beach's counsel; the witness saw no documents reflecting the purported fee agreement and no one at Biscayne Beach has personal knowledge.[2]

      2.     The Court should also disregard Biscayne Beach's Exhibit H [ECF No. 52-8]. F.R.E. 401, 403. An email from counsel for Westchester in response to a series of hostile emails from Biscayne Beach is not probative evidence.

**II.**     <u>**Applicable Arbitration Law**</u>

      Westchester moved to vacate the appraisal awards pursuant to both the Federal Arbitration Act ("FAA") and the Florida Arbitration Code ("FAC"). "[I]f a contract involves interstate commerce, a court must resolve arbitration disputes according to the [Federal Arbitration Act] …." *Kong v. Allied Professional Ins. Co.*, 750 F.3d 1295, 1303 (11th Cir. 2014). The FAA is supplemented by the FAC to the extent it does not conflict with the FAA. *UBS Fin. Servs., Inc. v. Walzer*, 9:19-cv-81161, 2019 WL 7283220, at *2 (S.D. Fla. Dec. 27, 2019). This is a diversity action and there does not appear to be any dispute that the Policy involves interstate commerce. Therefore, the FAA applies and is supplemented by the FAC.

      In any event, federal courts recognize that "[t]he Florida Arbitration code also sets forth the same narrow bases as the FAA for vacating, modifying or correcting an award." *Hasson v. W. Reserve Life Assurance Co.*, No. 8:06-cv-523-T-23-TBM, 2006 WL 2691723, at *4 (M.D. Fla. Sept. 19, 2006) (citing Fla. Stat. §§ 682.13-682.14). Therefore "[t]he Court does not need to resolve this dispute" over whether the FAA or FAC applies. *Morgan Keegan & Co. v. Lieberman*, 2011 WL 13223481, at *2 (S.D. Fla. Dec. 19, 2011). The "Court's analysis under and [9 U.S.C. § 10] or [Fla. Stat. § 682.13(1)] would be the same." *Id.*

      Additionally, when considering disputes under the FAC, Florida courts regularly rely on cases brought under the FAA. "Because the Federal Arbitration Act (FAA) is applicable nationally, it has produced more reported cases than the Florida cases applying the Florida Arbitration Code, Chapter 682, Florida Statutes. The federal cases are considered 'highly persuasive' because the Code is modeled after the FAA." *Marcum LLP v. Potamkin*, 107 So. 3d 1193, 1195 n.3 (Fla. Dist. Ct. App. 2013) (citing *RDC Gold of Fla. I, Inc. v. Apostolicas*, 925

---

[2] Macrina Dep. 14:11-15:17; 25:2-25:5 [ECF No. 46-4].

So. 2d 1082, 1091 (Fla. Dist. Ct. App. 2006)). Accordingly, a conflict of laws analysis is unnecessary and Westchester's motion is fully supported.[3]

Regardless of which statute applies, neither statute conditions vacatur on the number of signatures on the award, and an improperly procured award is not shown "even higher deference" merely because three appraisers signed it. The cases cited by Biscayne Beach in this regard are inapposite.[4] Resp. at 5. Additionally, Biscayne Beach's citation to *Guzman* and *Allstate v. Suarez*, Resp. at 6-7, for the proposition that appraisal "should be conducted in accordance with the policy provisions and not pursuant to Florida's Arbitration Code," is misplaced. *Suarez*, 833 So. 2d 762, 765 (Fla. 2002), which *Guzman v. Am. Sec. Ins. Co.*, 377 F. Supp. 3d 1362 (S.D. Fla. 2019) quotes, resolved whether appraisals require formal arbitration hearings pursuant to Fla. Stat. § 682.06. While appraisals do not require formal hearings, "[c]ourts regularly confirm appraisal awards on the basis of the Florida Arbitration Code's confirmation process even though they have recognized differences between the appraisal and arbitration provisions." *Guzman*, 377 F. Supp. 3d at 1364; *see also A.L. Gary & Assocs., Inc. v. Travelers Indem. Co. of Conn.*, No. 08-60636-civ, 2008 WL 11333729 (S.D. Fla. Aug. 27, 2008) (vacating appraisal award under Fla. Stat. § 682.13).

### III.   Biscayne Beach failed to disclose facts likely to affect Mr. Pyka's impartiality.

Florida law requires all appraisers to disclose "any known facts that a reasonable person would consider likely to affect the person's impartiality" before accepting an

---

[3] In Footnote 31 of the Response, Biscayne Beach argues Westchester is judicially estopped from arguing that the FAA applies because in a different lawsuit with a different policyholder, Westchester stated that the insurance policy is to be interpreted by Florida law, an uncontroversial proposition. "[J]udicial estoppel generally prevents a party from prevailing in *one phase of a case* on an argument and then relying on a contradictory argument to prevail in *another phase.*" *Square Ring, Inc. v. Troyanovsky*, No. 3:16-cv-641-MCR, 2018 WL 73550674, at *21 n.56 (N.D. Fla. Feb. 12, 2018) (quoting *Pegram v. Hendrich*, 530 U.S. 211, 227 n.8 (2000)) (emphasis added). Biscayne Beach does not identify any contradictory arguments advanced by Westchester in this case, and does not even argue that the positions taken in *Shores at Coco Plum* were in dispute.

[4] *Candales v. Allstate Ins. Co.*, 421 So. 2d 42 (Fla. Dist. Ct. App. 1982) involved a motion to confirm an arbitration award under Fla. Stat. § 682.12 and the court explicitly noted "no grounds for vacating or modifying that award were presented below under Sections 682.13 …." *Travelers Indem. Co. v. Walton*, 384 So. 2d 939 (Fla. Dist. Ct. App. 1980) briefly addressed the question of whether all three arbitrators on a three-arbitrator panel must vote, and resolved it by reference to Fla. Stat. § 682.05 which requires only majority rule; there was no discussion of vacatur of awards.

appointment, and imposes on appraisers "a continuing obligation to disclose … any facts that the [appraiser] learns after accepting appointment that a reasonable person would consider likely to affect the impartiality of the [appraiser]." § 682.041(1), (2); Mot. to Vacate, at 12. "If the [appraiser] did not disclose a fact as required by subsection (1) or subsection (2), upon timely objection by a party, the court may vacate an award under s. 682.13(1)(b)." § 682.041(4).

It is undisputed that, at a minimum, Mr. Pyka "offered" to work on a contingent fee basis, and drafted and transmitted two contingent fee contracts in August 2019. Mot. to Vacate ¶¶ 23-24. A reasonable person would consider those "offers" likely to affect Mr. Pyka's impartiality. Those facts should not have come to light for the first time in March 2021 when the Court permitted discovery. Because Biscayne Beach failed to disclose that information in August 2019, the award is subject to vacatur under § 682.13(1)(b) pursuant to § 682.041(4).[5]

## IV.    There was objectively and subjectively evident partiality by Mr. Pyka.

Biscayne Beach focuses entirely on the objective question of whether Mr. Pyka in fact had a contingent fee, a finding that is supported by the evidence. Mr. Pyka emailed the panel unprompted advising that he has a percentage interest in the award and confirmed his disclosure several minutes later; Mr. Pyka drafted two separate contingent fee agreements on separate dates; and Mr. Martinez, Biscayne Beach's public adjuster, reviewed and approved the contingent fee agreement. Neither Mr. Pyka nor Biscayne Beach can produce a single email, contract, meeting note or other document proving an hourly fee agreement. Until Biscayne Beach drafted an affidavit for Mr. Pyka to sign in response to Westchester's motion to reopen the case, no evidence of an hourly fee agreement existed.

Further, Mr. Pyka has still not even asked Biscayne Beach for payment. His payment is contingent on this lawsuit. It is not credible for Biscayne Beach and Mr. Pyka to argue that Mr. Pyka will seek payment when he is "done with the claim," Resp. n.40, because his job as appraiser ended when the panel entered the award. Likewise, it is not reasonable for Biscayne Beach to ask the Court to ignore all the evidence proving Mr. Pyka had a financial interest in

---

[5] Although § 682.041(4) does not clearly state which subpart of § 682.13(1)(b) would be operative, failure to disclose information as required by statute would be evidence of evident partiality and misconduct by an appraiser prejudicing the statutorily-guaranteed rights of a party.

the appraisal award on account of Mr. Pyka being so busy and confused. The Biscayne Beach appraisal was the only appraisal Mr. Pyka had on behalf of a policyholder, and Mr. Pyka claims he could not remember how he was being paid even though he is paid hourly by insurance companies on every single other appraisal that he handles.[6] Accepting Biscayne Beach's "theories … would require a suspension of disbelief not normally associated with legal proceedings." *Boom v. Rosebandits, LLC*, No. 13-21506-civ, 2013 WL 5928342, at *4 (S.D. Fla. 2013).

Biscayne Beach also fails entirely to address the subjective question of how Mr. Pyka's belief that he had a contingent fee agreement—mistaken or not—affects his partiality. If at any time Mr. Pyka believed he had a financial interest in the outcome, then the risk of bias was the same as if Mr. Pyka in fact had a financial interest in the outcome. It is undisputed that on February 3, 2020, the day Mr. Pyka presented a $40+ million dollar estimate, Mr. Pyka believed he had a contingent fee agreement and continued to believe that until after the award was entered. Mot. to Vacate ¶¶ 26, 30. Further, an appraiser who fails to make proper disclosures "is **presumed to act with evident partiality** under s. 682.13(1)(b)." Fla. Stat. § 682.041(5) (emphasis added).[7]

## V.   Mr. Pyka was not impartial as required by the Policy.

"[T]he implied covenant of good faith and fair dealing is a part of every contract under Florida law." *Ernie Haire Ford, Inc. v. Ford Motor Co.*, 260 F.3d 1285, 1291 (11th Cir. 2001). "With the implied covenant, one party cannot exercise discretion accorded it under a contract so as to thwart the contracting parties' reasonable expectations." *Id.* To allege a breach of the implied covenant, the party "must demonstrate a failure or refusal to discharge contractual responsibilities, prompted not by an honest mistake, bad judgment or negligence; but, rather

---

[6] Pyka Dep. 64:17-66:5; 74:10-74:12 [ECF No. 46-5].

[7] In footnote 42, Biscayne Beach questions whether the award can be vacated as a result of Mr. Pyka's partiality, rather than the partiality of the umpire. Under the FAA, the award should be vacated "where there was evident partiality or corruption in the arbitrators, **or either of them**." 9 U.S.C. § 10(a)(2) (emphasis added). If the FAA and FAC are in conflict, the FAA controls because the Policy involves interstate commerce. Even if the FAC controls, Mr. Pyka was "appointed as a neutral arbitrator" because the Policy requires each party to appoint an "impartial" appraiser. *Colo. Hospitality Servs., Inc. v. Owners Ins. Co.*, No. 14-cv-001859, 15-cv-01046, 2015 WL 4245821, n.3 (D. Colo. July 14, 2015) (finding "little meaningful difference between an 'impartial' and a 'neutral' appraiser").

by a conscious and deliberate act, which unfairly frustrates the agreed common purpose and disappoints the reasonable expectations of the other party …." *Sibata v. Lim*, 133 F. Supp. 2d 1311, 1319 (M.D. Fla. 2000) (citing *Cox v. CSX Intermodal, Inc.*, 732 So. 2d 1092, 1097 (Fla. Dist. Ct. App. 1999)).

The Policy requires each party to "select a competent and impartial appraiser." That clause would be rendered meaningless if the appraisers are not required to remain "impartial" throughout the appraisal. This Court recognizes that "an appraiser with a financial interest in the outcome of an appraisal is not impartial," and that changing the fee agreement would not suddenly render the appraiser "unbiased and unswayed by personal interest." *Shores at Coco Plum Condo. Ass'n, Inc. v. Westchester Surplus Lines Ins. Co.*, 18-23910-civ, 2019 WL 2223172, at *2 (S.D. Fla. Apr. 29, 2019) (citing *Verneus v. Axis Surplus Ins. Co.*, No. 16-cv-21863, 2018 WL 3417905, at *7 (S.D. Fla. July 13, 2018)).[8]

The impartiality standard referenced in *Shores at Coco Plum* is different from the "evident partiality" standard because it originates in the contract, not the arbitration code. Thus, if at any time, Mr. Pyka had a financial interest in the outcome of the award or attempted to obtain a financial interest in the outcome, he could not serve as appraiser. As discussed, the evidence supports a finding that Mr. Pyka had a financial interest in the outcome—he stated so himself in his February 3, 2020 emails. Mr. Pyka also testified at deposition that he offered to work on a contingent fee basis in August 2019. Even if Mr. Pyka could have been considered "impartial" at the outset, he ceased to be when he attempted to obtain an interest in the award. By doing so, Mr. Pyka and Biscayne Beach frustrated the impartiality requirement of the appraisal provision in breach of the implied covenant of good faith and fair dealing. In other words, by admittedly offering to work on a contingent fee basis, Mr. Pyka's misconduct prejudiced Westchester's right to an appraisal conducted by impartial appraisers, which mandates vacatur under § 682.13(1)(b).

---

[8] In footnote 43, Biscayne Beach argues the Court must follow the *Rios* and *Galvis* line of cases because this Court is within Florida's third appellate district. *Bravo v. U.S.* is distinguishable because "the point at which [a jury] award shocks the judicial conscience varies from district court of appeal to district court of appeal in Florida." 532 F.3d at 1169. The Eleventh Circuit later clarified its opinion, explaining that it is "'bound' to follow an intermediate state appellate court 'unless there is persuasive evidence that the highest state court would rule otherwise.'" *Bravo v. U.S.*, 577 F.3d 1324, 1326 (11th Cir. 2009).

**VI.**   **Mr. Pyka only had authority if he was contractually eligible to serve as appraiser.**

Mr. Pyka's authority to act and to continue to act as appraiser, to appoint Mr. Womack as umpire, and to sign the appraisal award was derived from the Policy's appraisal provision. As discussed above with respect to Biscayne Beach and Mr. Pyka prejudicing Westchester's rights, the determination of whether Mr. Pyka was impartial as that term is used in the Policy is different from the "evident partiality" determination. Mr. Pyka only had authority to act if he was properly appointed as appraiser, and continued to meet those criteria. Because Mr. Pyka did not, he lacked authority to act as appraiser.

**VII.**   **The panel so imperfectly executed their powers that a definite award was not made.**

Biscayne Beach does not dispute that the Policy involves interstate commerce. Section 10(a)(4) of the FAA, therefore, must apply because the FAA establishes "a national policy favoring arbitration," which "foreclose[s] state legislative attempts to undercut the enforceability of arbitration agreements." *Preston v. Ferrr*, 552 U.S. 346, 353 (2008). Thus, an award that is "so imperfectly executed" is subject to vacatur.

Under Florida law, "[o]nly if a court determines that coverage exists for [an] element of loss will the amount of appraisal for that element of loss be binding on [the insurer]." *Liberty Am. Ins. Co. v. Kennedy*, 890 So. 2d 539 (Fla. 2d DCA 2005); *Sands on the Ocean Condo. Ass'n, Inc. v. QBE Ins. Corp.*, No. 05-14362-civ, 2009 WL 790120, at *3 (S.D. Fla. Mar. 24, 2009). After an appraisal panel enters an award, the court must "decid[e] the issue of coverage liability" for the component parts. *Fla. Ins. Guar. Ass'n, Inc. v. Olympus Ass'n, Inc.*, 34 So. 3d 791, 796 (Fla. 4th DCA 2010). "[I]t is well-settled that coverage and defense issues are for the Court, not the appraisers, to decide." *Fla. Gaming Corp. v. Affiliated FM Ins. Co.*, No. 07-20897-civ, 2008 WL 11407210, at *1 (S.D. Fla. Apr. 21, 2008). "It is up to the Court to interpret the Policy and determine whether each such loss is covered and up to what amount." *Id.*

The appraisal award is too vague and the panel was unable to provide sufficient clarity for the Court to determine whether each element and what amount of the awards are covered under the Policy. Therefore, the awards must be vacated.

**VIII.**   **Biscayne Beach procured the appraisal award by concealing its financial relationship with Mr. Pyka.**

Biscayne Beach relies on *Davenport v. Dimitrijevic*, 857 So. 2d 957, 962 (Fla. Dist. Ct. App. 2003), which explains that when considering motions brought under § 682.13(1)(a), Florida state courts follow the standard set in *Bonar v. Dean Witter Reynolds, Inc.*, 835 F.2d 1378 (11th Cir. 1988). *Davenport* further holds that "[p]erjury constitutes fraud within the meaning of section 682.13(1)(a) and 9 U.S.C. § 10(a)(1)." *Id.* (citing *Bonar*, 835 F.2d at 1383 n.7). Mr. Pyka made objectively false and inconsistent sworn statements aimed towards defeating a motion to vacate the appraisal awards. Mot. to Vacate at 19-20.

With respect to the surprise time log Mr. Pyka produced during his deposition, Biscayne Beach's defense of the document is not credible, and also demonstrates Biscayne Beach's complicity in the scheme. The second entry to the spreadsheet is dated October 19, 2021—a date that is still four months away—instead of October 19, 2018.[9] If Mr. Pyka is drafting the second entry of his time log in 2021, then he (or whomever drafted it) also drafted every entry that follows in 2021. Mr. Pyka described the Excel spreadsheet as the "time logs that [he] kept" and advised that he "[r]eviewed it in full, maybe as [he] went along."[10] Right before producing it, Mr. Pyka added, "I haven't reviewed my T&E in response to that subpoena," suggesting that the entries are old and not fresh in Mr. Pyka's memory. Mr. Pyka and Biscayne Beach would only do this to conceal an improper fee agreement, which they have been doing since Biscayne Beach replaced Mr. Martinez with Mr. Pyka.

*Irwin v. Miami-Dade Cnty. Public Schools*, No. 06-cv-230239, 2009 WL 465033 (S.D. Fla. Feb. 24, 2009) is inapposite because the elements of fraud discussed there were for an affirmative claim of common law fraud, not fraudulently procure appraisal awards. It is not relevant whether Westchester had knowledge of Mr. Pyka's February 3, 2020 email prior to the appraisal panel signing the award (the panel signs, not the parties). As discussed more in the waiver section below, there is nothing that Westchester could have done at that time. The concealment, and the critical time period, was the beginning of the appraisal. Had Biscayne Beach disclosed, rather than concealed, its financial relationship with Mr. Pyka, Westchester could have moved to disqualify him.

---

[9] Biscayne Beach does not dispute the accuracy of any of the screenshots of the spreadsheet contained in the Wolfinger Report [ECF No. 46-7], or the printout attached to the Deposition of Blake Pyka as Exhibit J [ECF No. 46].
[10] Pyka Dep. 56:23-57:2; 60:20-60:22 [ECF No. 46-5].

The fraud and undue means at issue here is Biscayne Beach's concealment of its financial relationship with Mr. Pyka, which followed Biscayne Beach replacing Lester Martinez as appraiser with Mr. Pyka because of its contingent fee agreement with Mr. Martinez. Biscayne Beach is now using objectively false sworn statements and a fabricated spreadsheet in furtherance of that concealment. Therefore, the award must be vacated.

**IX.    Westchester did not waive its right to an impartial appraisal panel.**

The appraisal panel operates independently of the parties. "[W]hile the appraisers are appointed by the parties, they are not subject to the control of the parties. They are not agents in law and ought not to be in practice." *Copper Oaks Master Home Owners Ass'n v. Am. Family Mut. Ins. Co.*, 416 F. Supp. 3d 1115, 1123 (D. Colo. 2019) (quoting *Norwich Union Fire Ins. Society v. Cohn*, 68 F.2d 42 (10th Cir. 1933)). When Mr. Pyka disclosed his financial interest in the award seventeen months into the appraisal, Westchester had no option other than to wait and then file a motion to vacate the award. Westchester respected the process. "Parties to an arbitration generally may not challenge the fairness of the proceedings or the partiality of the arbitrators until the conclusion of the arbitration and the rendition of a final award." *Savers Prop. & Cas. Ins. Co. v. Nat'l Union Fire Ins. Co. of Pittsburg, Pa.*, 748 F.3d 708, 716 (6th Cir. 2014) (collecting cases). Courts may decide "gateway matters" at the outset of the appraisal, and at the conclusion, courts are authorized to enter orders confirming, vacating, or modifying the award. *Id.* at 717; *see also Schatt v. Aventura Limousine & Transp. Servs., Inc.*, 603 F. App'x 881, 887 (11th Cir. 2015) (holding that "the FAA allows review of final arbitral awards only"). Mr. Pyka's email disclosure took place on the day of the final appraisal conference.  It simply was not appropriate for counsel to interfere in the appraisal process at the 11th hour.

The cases cited by Biscayne Beach regarding waiver are distinguishable because those cases involved a party knowing of the potential partiality at the outset of the arbitration. Here Mr. Pyka disclosed having a contingent fee seventeen months in, on the day of the panel's final conference, and even then, he did not answer Mr. Lewis' follow-up questions or provide details about his fee agreement.[11] Biscayne Beach cites no authority for finding waiver where

---

[11] *See, e.g.*, *Bianchi v. Roadway Express, Inc.*, 441 F.3d 1278 (11th Cir. 2006) (where the movant knew all facts pertaining to the alleged bias before a grievance hearing and acknowledged at the hearing that he was fairly represented); *Merrill Lynch, Pierce, Fenner & Smith, Inc. v.*

the disclosure is made at the end of the appraisal because permitting such a late disclosure defeats the purpose of requiring disclosure of conflicts and bases for partiality.

In any event, Westchester expressly objected to Biscayne Beach paying its appraiser on a contingent fee at the outset of the appraisal process when Biscayne Beach appointed its public adjuster Lester Martinez as appraiser. Joint Stipulation [D.E. 11]. Biscayne Beach then repeated itself and appointed Mr. Pyka as appraiser and agreed to pay him on a contingent fee basis. Considering that Biscayne Beach repeated the very conduct that Westchester objected to and now vigorously argues that Mr. Pyka was indeed impartial and properly served as appraiser, Westchester was not required "to renew [its] objection … in what would have been an obviously futile gesture." *Webb v. Priest*, 413 So. 2d 43, 46 (Fla. Dist. Ct. App. 1982). Westchester had to allow the appraisal process to conclude without attorney interference[12] so that the Court could decide the proper recourse. Accordingly, Westchester did not waive its right to vacate the appraisal awards by not objecting when Mr. Pyka disclosed his partiality to the appraisal panel in month seventeen of an eighteen month appraisal.[13]

## X.   <u>Conclusion</u>

Contractual appraisal is a non-judicial process that requires impartiality and fairness on the part of the party-appointed appraisers. Appraisal is designed to avoid the litigation of disputes regarding the value of covered losses. Biscayne Beach sustained a covered loss; indeed, Westchester has already made a substantial seven figure payment to its insured. With good reason, and based upon credible, objective evidence, Westchester does not believe that Biscayne Beach has approached this appraisal with the required fairness and impartiality. The appraisal process simply does not work when approached in this manner.

---

*Smolchek*, No. 12-80355-civ, 2012 WL 4056092, at *3 (S.D. Fla. Sept. 17, 2012) ("Merrill Lynch knew the relevant information and failed to raise the issue of Mrs. Pearce's partiality before the commencement of the hearing."); *Dadeland Square, Ltd. v. Gould*, 763 So. 2d 524 (Fla. Dist. Ct. App. 2000) (during a pre-arbitration conference call, arbitrator disclosed having a relationship with an interested party).

[12] Mot. to Vacate ¶ 9 [ECF No. 46].

[13] Insofar as Biscayne Beach suggests Westchester waived its right to an impartial panel when Mr. Lewis signed the appraisal awards, Mr. Lewis is a non-attorney, impartial appraiser whose role is determining the amount of loss, not asserting Westchester's legal rights. Lewis Dep. 68:3-70:20 [ECF No. 46-3].

Respectfully submitted,

**COZEN O'CONNOR**

By: /s/ John David Dickenson
John David Dickenson
Florida Bar No. 575801
jdickenson@cozen.com
Chad A. Pasternack
Florida Bar No. 117885
cpasternack@cozen.com
One North Clematis Street, Suite 510
West Palm Beach, Florida  33401
Telephone:  (561) 515-5250

*Counsel for Defendant, Westchester Surplus Lines Insurance Company*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on June 18, 2021, I electronically filed the foregoing document with the Clerk of Court using CM/ECF.  I also certify that the foregoing document is being served this day on all counsel of record identified on the attached Service List in the manner specified, either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to electronically receive Notices of Electronic Filing.

  /s/    *John David Dickenson.*
John David Dickenson, Esq.

**SERVICE LIST**

*Counsel for Plaintiff*
Jesmany Jomarron, Esq.
JOMARRON | LOPEZ
4300 Biscayne Boulevard, Suite 305
Miami, FL 33137
eservice@justice360.com
jjomarron@justice360.com

12