10UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

CASE NO. 18-CV-23105-COOKE

BISCAYNE BEACH CLUB
CONDOMINIUM ASSOCIATION, INC.,

Plaintiff,

v.

WESTCHESTER SURPLUS LINES
INSURANCE COMPANY,

Defendant.
_____/

**OMNIBUS ORDER ON RENEWED MOTION TO VACATE, MOTION FOR CONFIRMATION OF APPRAISAL AWARD, AND MOTION TO DISMISS WITH PREJUDICE FOR FRAUD ON THE COURT AND FOR SANCTIONS**

**THIS MATTER** is before the Court on Defendant's Renewed Motion to Vacate Appraisal Award (the "Renewed Motion") (ECF No. 46), Plaintiff's Motion for Confirmation of Appraisal Award (the "Confirmation Motion") (ECF No. 57), and Defendant's Motion to Dismiss with Prejudice for Fraud on the Court and for Sanctions (the "Motion to Dismiss") (ECF No. 49). Together these motions shall be referred to collectively herein as the "Motions". The Motions are fully briefed. *See* ECF Nos. 52, 54, 58, 55, 56, and 61.

The Court having reviewed the Motions, the briefing related thereto, and the relevant legal authorities, finds, for the reasons discussed below, that the Renewed Motion and the Motion to Dismiss should be denied, and the Confirmation Motion should be granted.

## Background

The Complaint in this matter was originally filed in the Eleventh Judicial Circuit in and for Miami-Dade County on June 11, 2018. Defendant Westchester Surplus Lines Insurance Company ("Westchester" or "Defendant") removed this action to this Court, on July 31, 2018, based upon diversity jurisdiction. *See* ECF No. 1, Notice of Removal at ¶ 6. This is a breach of insurance contract dispute over property losses resulting from two major

storm events in South Florida: Hurricane Irma and Tropical Storm Philippe. The crux of the dispute centers around the amount of the losses Plaintiff's real property sustained.

On August 24, 2018, Plaintiff Biscayne Beach Condominium, Inc. ("Biscayne Beach" of "Plaintiff") invoked its rights to an appraisal under the insurance contract (the "Policy") between the Parties. ECF No. 11-2. In relevant part, the Appraisal provision within the Policy states:

> If we and you disagree on the value of the property or the amount of loss, either may make written demand for an appraisal of the loss. In this event, each party will select a competent and impartial appraiser. The two appraisers will select an umpire. If they cannot agree, either may request that the selection be made by a judge of a court having jurisdiction. The appraisers will state separately the value of the property and amount of loss. If they fail to agree, they will submit their difference to the umpire. A decision agreed to by two will be binding.

ECF No. 46-1 at p. 22, § E.2.

On September 17, 2018, this Court entered an Order Approving Stipulation and Abating Lawsuit so that the Parties could complete the appraisal process related to the losses. That process was completed on March 12, 2020 when the Appraisal Panel issued the Appraisal Awards (one for each building and one for each claim) totaling $13,844,843.83. ECF No. 30-6. Defendant then moved to vacate the appraisal awards and Defendant also requested that the Court re-open the case to permit limited discovery. Thereafter, the Court issued an Omnibus Order Granting In Part Defendant's Motion to Re-Open the Case and to Permit Limited Discovery and Denying Without Prejudice Defendant's Motion to Vacate Appraisal Awards. ECF No. 45. In doing so, the Court permitted limited discovery regarding any fee arrangements between Biscayne Beach and Appraiser Blake Pyka ("Mr. Pyka") and the underlying composition of the appraisal awards. *Id.* The Court authorized this limited discovery because Defendant raised concerns that Mr. Pyka had a contingency fee arrangement with Biscayne Beach through which he would receive a percentage of any appraisal award issued to Biscayne Beach.

After the Parties concluded their limited discovery, Defendant filed its Renewed Motion on May 10, 2021. ECF No. 46. And Defendant filed its Motion to Dismiss on May 28, 2021. ECF No. 49. Plaintiff then filed its Confirmation Motion on July 6, 2021. ECF No. 57. As previously mentioned, all three motions are fully briefed and ripe for adjudication.

## Analysis

### I. Defendant's Renewed Motion to Vacate is Denied

In its Renewed Motion, Defendant argues that the appraisal awards should be vacated because: 1) Mr. Pyka acted in a manner that demonstrated evident partiality; 2) Mr. Pyka's misbehavior prejudiced Defendant's rights; 3) the Appraisal Panel exceeded its powers as a result of Mr. Pyka's financial interest in the Appraisal Awards; 4) the Appraisal Awards were procured by corruption, fraud, or undue means due to Mr. Pyka's fabrication of contemporaneous time records to conceal his contingency fee arrangement with Plaintiff; and 5) the Appraisal Panel exceeded its powers or so imperfectly executed its powers that a mutual, final, and definite award was not made.

As discussed below, the bulk of these arguments are built upon Defendant's unsupported premise that Mr. Pyka had a financial interest in the Appraisal Awards due to his purported contingency fee arrangement with Plaintiff. This premise, however, lacks evidentiary support. As such, Defendant's vacatur arguments collapse upon themselves when evaluated against the evidence adduced through the Parties' limited discovery in this case. Moreover, to the extent that Defendant's arguments are based upon the more expansive vacatur grounds under the Federal Arbitration Act, they fail because the grounds for vacatur under the Florida Arbitration Code are limited to the vacatur grounds outlined in Florida Statutes § 682.13.

There is disagreement between the Parties as to the correct legal standard that governs the Renewed Motion. More specifically, Defendant argues that the vacatur standard under the Federal Arbitration Act and its federal common law applies. Meanwhile, Plaintiff contends that Florida law applies. As such, the Court must resolve this issue first.

#### A. Florida Law Applies

"Interpretation of an insurance contract is a question of law to be decided by the Court." *Guzman v. Am. Sec. Ins. Co.*, 377 F. Supp. 3d 1362, 1364 (S.D. Fla. 2019) (citing *Gulf Tampa Drydock Co. v. Great Atlantic Ins. Co.*, 757 F.2d 1172, 1174 (11th Cir. 1985)). "A federal court sitting in diversity applies the substantive law of the forum state[.]" *Marlowe v. Ironshore Specialty Ins. Co.*, No. 218CV245FTM38MRM, 2020 WL 736628, at *2 (M.D. Fla. Jan. 29, 2020), report and recommendation adopted, No. 218CV245FTM38MRM, 2020 WL 736000 (M.D. Fla. Feb. 13, 2020) (citing *Erie R.R. Co. v. Tompkins*, 304 U.S. 64, 76 (1938)). As

previously mentioned, this case is before the Court pursuant to diversity jurisdiction. As such, Florida substantive law applies to this case. *See id.* (*Grupo Televisa, S.A. v. Telemundo Commc'ns Group, Inc.*, 485 F.3d 1233, 1240 (11th Cir. 2007)).

"Although Florida courts recognize that there are some differences between appraisal and arbitration provisions, they generally construe appraisal clauses as narrow arbitration provisions." *Pelican Pointe of Sebastian II Condo. Ass'n, Inc. v. Empire Indem. Ins. Co.*, No. 05-14142-CIV, 2007 WL 9702449, at *2 (S.D. Fla. Aug. 8, 2007) (citing *Three Palms Pointe, Inc. v. State Farm Fire & Cas. Co.*, 250 F. Supp. 2d 1357, 1362 (M.D. Fla. 2003) citing *United States Fidelity & Guaranty Co. v. Romay*, 733 So. 2d 467, 469 (Fla. 3d DCA 1999)). "Indeed, Florida's appellate courts have regularly confirmed appraisal awards on the basis of the Florida Arbitration Code's confirmation process." *Id.* (citations omitted). *See also Guzman v. Am. Sec. Ins. Co.*, 377 F. Supp. 3d 1362, 1364 (S.D. Fla. 2019) (stating "[Florida] [c]ourts regularly confirm appraisal awards on the basis of the Florida Arbitration Code's confirmation process even though they have recognized differences between the appraisal and arbitration provisions."). Likewise, "Florida state courts and [federal courts] have held that [the Florida Arbitration Code] also provides the grounds for vacating insurance appraisal awards." *Marlowe v. Ironshore Specialty Ins. Co.*, No. 218CV245FTM38MRM, 2020 WL 736628, at *2 (M.D. Fla. Jan. 29, 2020), report and recommendation adopted, No. 218CV245FTM38MRM, 2020 WL 736000 (M.D. Fla. Feb. 13, 2020) (quoting *Villas at the Hammocks v. Empire Indem. Ins. Co.*, No. 11-20470-cv-UNGARO, 2011 WL 13223726, at *2 (S.D. Fla. Apr. 5, 2011)). As a result, the Court finds that Florida's Arbitration Code governs the analysis of both motions to vacate appraisal awards and motions to confirm appraisal awards. *See Mont Claire at Pelican Marsh Condo. Ass'n, Inc. v. Empire Indem. Ins. Co.,* No. 2:19-CV-601-SPC-MRM, 2021 WL 3476406, at *4 (M.D. Fla. May 24, 2021), report and recommendation adopted, No. 2:19-CV-601-SPC-MRM, 2021 WL 3205694 (M.D. Fla. July 29, 2021) ("In light of jurists within the Eleventh Circuit continuing to apply Fla. Stat. § 682.13 to motions to confirm or set aside appraisal awards and the Eleventh Circuit's affirmance of the district court's decision in *Three Palms Pointe, Inc. v. State Farm Fire & Casualty Company*, which specifically found that Florida's Arbitration Code applied to motions to confirm appraisal awards, the Undersigned finds that Florida's Arbitration Code applies to motions to set aside invalid appraisal awards.").

Based upon the above, Defendant's Renewed Motion to Vacate and Plaintiff's Motion for Confirmation shall be evaluated in accordance with the Florida Arbitration Code.

### B. Grounds for Vacatur of an Appraisal Award Under the Florida Arbitration Code

"Section 682.13 of the Florida Statutes provides the grounds for vacating arbitration awards, but Florida state courts and [federal courts] have held that it also provides the grounds for vacating insurance appraisal awards." *Marlowe*, 2020 WL 736628, at *2 (quoting *Villas at the Hammocks*, 2011 WL 13223726, at *2). In relevant part, Section 682.13(1), states:

> (1) Upon motion of a party to an arbitration proceeding, the court shall vacate an arbitration award if:
>
> (a) The award was procured by corruption, fraud, or other undue means;
>
> (b) There was:
>
> 1. Evident partiality by an arbitrator appointed as a neutral arbitrator;
>
> 2. Corruption by an arbitrator; or
>
> 3. Misconduct by an arbitrator prejudicing the rights of a party to the arbitration proceeding; . . .[or]
>
> (d) An arbitrator exceeded the arbitrator's powers.

Fla. Stat. § 682.13 (2021). *See also Marlowe*, 2020 WL 736628, at *2 (citing *Villas at the Hammocks*, 2011 WL 13223726 at *2 (citing Fla. Stat. § 682.13(1))). In the absence of one the vacatur reasons outlined in Section 682.13, "a court may not vacate the [appraisal] award." *Id.*

### C. Defendant Fails to Establish the Appraisal Awards Should be Set Aside Due to Evident Partiality

As discussed above, an appraisal award can be set aside due to the evident partiality of an arbitrator that was appointed as a neutral arbitrator. Fla. Stat. § 682.13(1)(b)1. (2021). The "alleged partiality must be 'direct, definite and capable of demonstration rather than remote, uncertain and speculative.' . . . [t]he mere appearance of bias or partiality is not enough to set aside an arbitration award." *Roberta Press Living Tr., Roberta Press v. T.D. Ameritrade, Inc.*, No. 11-81268-CIV, 2012 WL 13019191, at *2 (S.D. Fla. June 25, 2012)

(quoting *Lifecare Intern., Inc. v. CD Med., Inc.*, 68 F.3d 429, 433 (11th Cir. 1995) (quoting *Middlesex Mut. Ins. Co. v. Levine*, 675 F.2d 1197, 1201 (11th Cir. 1982)).

Here, Defendant argues that the Appraisal Awards should be vacated due to evident partiality because Mr. Pyka had an actual bias or, alternatively, failed to disclose a potential bias. This argument fails.

First, Defendant's evident partiality argument fails because Florida Statutes § "682.13(1)(b) does not require an appraiser to remain impartial, but instead governs the Umpire." *Marlowe*, 2020 WL 736628, at *3. Thus, "[a] court may vacate an award for 'evident partiality . . . only in the case of a neutral arbitrator.'" *Id.* (citing *Lee v. Marcus*, 396 So. 2d 208, 209 (Fla. 3d DCA 1981)). "The Eleventh Circuit, however, has expressly stated an 'arbitrator appointed by a party is a partisan only one step removed from the controversy and need not be impartial.'" *Id.* (quoting *Lozano v. Maryland Cas. Co.*, 850 F.2d 1470, 1472 (11th Cir. 1988), cert. denied 109 S. Ct. 1136 (1989)). "Moreover, '[a]s the very nature of the widely-employed three-person arbitration panel itself implies, the arbitrators designated by the parties are not intended to be entirely disinterested or impartial.'" *Id.* (quoting *Lee*, 396 So. 2d at 209). "Accordingly, it has been held, seemingly without exception, that absent overt corruption or misconduct in the arbitration itself . . . no arbitrator appointed by a party may be challenged on the ground of his relationship to that party." *Id.* Accordingly, Defendant's evident partiality argument necessarily fails as a matter of law because Defendant does not contend that the Umpire was partial, but, rather, that Plaintiff's Appraiser – Mr. Pyka – purportedly was the impartial party.

Defendant's evident partiality argument also fails because Defendant has not proffered evidence to support the argument. Instead, Defendant's arguments are based upon assumptions, suppositions, and unwarranted conclusions that are contrary to the evidence put before this Court. For instance, Defendant contends that the following demonstrates Mr. Pyka's evident partiality:

> On August 5, 2019, ten months into the appraisal, Mr. Pyka sent to Lester Martinez, contracted public adjuster for Biscayne Beach, a fee agreement reflecting a 1% contingent fee. Mr. Martinez advised Mr. Pyka to identify Biscayne Beach as the client, and then on August 19, 2019, Mr. Pyka sent another contingent fee agreement to Mr. Martinez for signature. Mr. Martinez, Biscayne Beach's public adjuster and agent, forwarded this

> contingent fee agreement to Mr. Jomarron, counsel for Biscayne Beach, with instructions to "get this signed for Blake."

ECF 46 at p. 6, ¶ 23. Defendant, however, ignores the fact that Mr. Pyka repeatedly testified at his deposition that his forwarding of a contingency fee agreement to Mr. Martinez and others as well as his references to receiving a small percentage of the appraisal award were in error. In that respect, Mr. Pyka testified as follows:

> Q: Okay. So on this e-mail that we've just attached as Exhibit M, Pat Lewis responded to your statement that you have a very small percentage representing this file with [sic.]. So I understand, your appraisal representation is based on a percentage of the outcome, correct, do you see that there?
>
> A: Yes, sir.
>
> Q: And Keith Womack responds at 9:58 a.m. same day. Why are we discussing this now, to which you respond at 10:02, I wanted to disclose this clearly as there will be no influence or bias on my end. We can proceed when ready, right?
>
> A: Yes, sir.
>
> Q: Because at that time, you thought you had a contingent fee agreement?
>
> A: No, there is no contingency fee ever being signed on this. I cannot tell you how embarrassed I am of how just turning and burning files, man. I can't remember everything that's going on in every claim.

ECF No. 46-5, Pyka Dep. Tr. 78:3-22. Similarly, Mr. Pyka's deposition testimony reflects the following:

> Q: Okay. After you sent the August 5th e-mail that we just discussed, which was Exhibit K, Mr. Martinez asked you to revise the contract to make Biscayne Beach the client, correct?
>
> A: Yes, sir. That goes to show you how I don't have too much experience on the insured side.
>
> Q: Okay. And then you made that change to the fee agreement, which is here, and he forwarded the revised contract to Mr. Jesmany, is that right?
>
> A: Yes, sir.
>
> Q: The revised contract continued to state that your fee is 1 percent of the total loss, right?

> A: That was an offer I provided, yes, sir.
>
> Q: So on August 19, 2019, you thought you were being paid on a contingency fee basis, right?
>
> A: Again, I didn't know how I was getting paid whatsoever. I just threw it out there. It is the only one I had at the time. It was just an offer that I sent to him.
>
> Q: Did you think it was a possibility that you were going to be paid on a contingent fee basis?
>
> A: Again, I didn't remember. I'm super embarrassed to say. I didn't know. I deal with hundreds of claims. I inadvertently forgot.
>
> Q: And this was the only policyholder claim that you had at the time?
>
> A: Yes, sir, I believe so, yeah.
>
> Q: Okay. This will be attached as Exhibit L.
>
> A: Just really embarrassed about this.

*Id.* at 73:11-74:14. Mr. Pyka's deposition testimony also reflects as follows:

> Q: So on February 3, 2020, you thought you were being paid on a contingent fee basis?
>
> A: Well, no, I didn't think I was. Again, I work on -- I work on hundreds of claims, talking to multiple people. I work off my file. Whenever I was working the ending of this file, I saw there was a contingency agreement at that time. Right when I seen that -- I know that it is something you do, that you have to disclose if you were, and just that one time I saw -- oh, man, I need to disclose the fee agreement. Just in abundance of caution, I just sent that e-mail and just moved on to the next. I didn't even think about it. Sent in complete error and mistake on my part.
>
> Q: Well, I'm going to ask the question again. On February 3rd, 2020, you thought you were being paid on a contingent fee basis?
>
> A: No, I just saw the form in my documents, and I -- in abundance of caution, I sent it. I knew I had to disclose it, if that was the case. I had so much going on. There was the tropical storm, Irma. I was extremely busy, just turning and burning claims. I saw that, turned and burned and disclosed it. It was complete -- it was a complete mistake and totally false.

> Q: Why did you disclose it, if you didn't --
>
> A: I'm so sorry. Yeah, I never had an agreement with a percentage base with just money ever. There was never ever one signed.
>
> Q: Why did you disclose it, if you didn't think you had a contingent fee agreement?
>
> A: It was a complete mistake. It was -- I'm super -- you have no idea how apologetic and -- there was a mistake. I'm humbled and just -- I can't believe [sic] more apologetic. It was sent in error. I just need to spend more time on my business practices. It was a complete mistake.
>
> Q: Okay. But your testimony is, you saw the agreement in your file, and you thought you had to disclose it because you saw the agreement in your file, right?
>
> A: Yeah, it was just in my file. It was unsigned. I don't know -- I didn't take it out of there, and I was just working my files with hundreds and hundreds of other conversations, panel meetings, public adjuster conversations, hundreds and hundreds of these are going on during this claim. I just -- I seen it in there. I just quickly disclosed it because I thought, in abundance of caution, just to make sure. It was completely sent by mistake. It was a mistake. That's all I can say. It was in complete error.

*Id.* at 75:25-78:2.

Notably, Defendant has not come forth with any testimony or other evidence that contradicts Mr. Pyka's sworn testimony explaining that he was mistaken about the fee arrangement underlying his appraisal. Nor has Defendant come forth with a signed contingency agreement reflecting that Mr. Pyka is entitled to a contingency fee based upon the final appraisal award. Thus, Defendant's evident partiality argument rests solely upon Defendant's own unsupported suppositions and conjectures. That is not sufficient to warrant vacatur of an appraisal award. *See Ray v. Longhi*, No. 3:20-CV-213-J-32JRK, 2021 WL 307373, at *3 (M.D. Fla. Jan. 29, 2021) (recognizing that under Florida law, '[t]he correct test for weighing an arbitrator's evident partiality consists of judging whether the complaining party made a showing through credible evidence, giving rise to a reasonable impression of partiality that was direct, definite, and capable of demonstration, as distinct from a mere appearance of bias that was remote, uncertain, and speculative." quoting *Amalgamated Transit Union, Local 1579 v. City of Gainesville*, 264 So.3d 375, 380 (Fla. 1st DCA 2019) (internal

quotation marks omitted)). Therefore, based upon Mr. Pyka's sworn deposition testimony, and in light of the fact that Defendant has not come forth with any evidence to support a conclusion of evident partiality beyond Defendant's own speculation and unfounded assumptions, the Court finds that Defendant has failed to demonstrate that the Appraisal Awards should be set aside on the basis of evident partiality.

### D. Because Defendant Fails to Demonstrate that Mr. Pyka Had a Contingency Fee Arrangement, Defendant's Other Vacatur Arguments Also Fail

As previously mentioned, the bulk of Defendant's arguments are predicated upon its unsupported premise that Mr. Pyka had a financial interest in the Appraisal Awards due to his purported contingency fee arrangement. Because the Court has already determined that Defendant failed to proffer evidence demonstrating that Mr. Pyka had a contingency fee arrangement, all of Defendant's arguments predicated on that unsupported premise necessarily fail.

#### 1. Defendant Fails to Demonstrate that Mr. Pyka was not "Competent and Impartial"

Next, Defendant argues that the Appraisal Awards should be set aside because "Section 10(a)(3) [of the FAA] provides for vacatur where misbehavior by an arbitrator prejudices the rights of any party." ECF No. 46 at p. 13. In explaining the purported "misbehavior", Defendant argues:

> The Policy set requirements for the appraisers—that they be "competent and impartial"—which this Court has recognized. *Shores at Coco Plum Condo. Ass'n, Inc. v. Westchester Surplus Lines Ins. Co.*, No. 18-23910-civ, 2019 WL 2223172, at *2 (S.D. Fla. Apr. 29, 2019) (Cooke, J.) ("It is well-settled that an appraiser with a financial interest in the outcome of an appraisal is not impartial."). The contractual requirement for "impartial" appraisers "excludes those with a pecuniary interest in the outcome." *State Farm Fla. Ins. Co. v. Crispin*, 290 So. 3d 150, 153 (Fla. 5th DCA 2020). Courts set aside appraisal awards where an appraiser was under a contingent fee, because where the policy requires the parties to "select a competent and impartial appraiser," the appraisal award "was the product of an improper appraisal process." *Shree Hari Hotels, LLC v. Society Ins.*, No. 1:11-cv-01324, 2013 WL 4777212, at *1-3 (S.D. Ind. Sept. 5, 2013). . . . Mr. Pyka had a financial interest in the appraisal, or alternatively, believed he did and repeatedly offered to work on a contingent fee basis. He also appears to have taken direction from Mr. Martinez. This arrangement, however, is not what Westchester bargained for. The appraisal provision of the policy required Biscayne Beach to select a "competent and impartial" appraiser. Under well-established law,

> Mr. Pyka was not impartial. His very participation in the appraisal was prejudicial to Westchester. [*Move, Inc. v. Citigroup Global Mkts., Inc.*, 840 F.3d 1152, 1159 (9th Cir. 2016)]. Mr. Pyka's conduct as appraiser bears out this conclusion. Mr. Pyka estimated Biscayne Beach's loss at triple what it would cost to rebuild the entire property. Westchester was also denied a fair appraisal because the panel wrote the Appraisal Awards in a manner to maximize the amount of money Biscayne Beach can obtain from Westchester, and considered legal issues in the process. Therefore, the Appraisal Awards should be vacated.

*Id.* at pp. 13-14. Thus, the crux of Defendant's "misbehavior" argument is that the Appraisal Awards should be vacated because Mr. Pyka purportedly had a financial interest in the appraisal; however, as this Court has already noted, Defendant failed to support this premise with evidence. Instead, once again, Defendant relies upon supposition and speculation. This holds true for Defendant's suggestion that Mr. Pyka took direction from the public adjuster – Mr. Martinez. To be clear, Defendant simply has not provided any evidence to support these contentions. This argument, therefore, fails.

Additionally, to the extent Defendant's argument attempts to challenge the amount of the Appraisal Awards it fails because such attacks are improper. *See Mont Claire at Pelican Marsh Condo. Ass'n, Inc.*, 2021 WL 3476406, at *6 ("[t]he law is clear in that the Court may not substitute its judgment for that of the panel. Rather, the amount of loss is a question for the appraisal panel. Similarly, courts do not review findings of fact contained in an arbitration award or attempt to substitute their judgment for that of the arbitrator.") (citations and quotation marks omitted).

Nor would it be proper for this Court to evaluate the Appraisal Panel's legal determinations even if the Panel used the incorrect legal standard. Indeed, "the 'application of an incorrect standard . . . has consistently been rejected as a basis for vacating an [appraisal] award[.]" *Charlevoix Equity Partners Int'l, Inc. v. AIG Prop. Cas. Co.*, No. 16-24764-CIV, 2018 WL 3827616, at *3 (S.D. Fla. Aug. 10, 2018) (quoting *Felger v. Mock*, 65 So. 3d 625, 627 (Fla. 1st DCA 2011) (collecting cases from the Florida Supreme Court and various Florida District Courts of Appeal)). *See also Wells v. Castro*, 117 So. 3d 1233, 1237 (Fla. 3d DCA 2013) ("it is important to note that the Florida Supreme Court made clear *in Schnurmacher Holding, Inc. v. Noriega*, 542 So.2d 1327 (Fla.1989), that application of an incorrect standard or an error of law is an insufficient basis upon which to vacate an award under the relevant statutes: As we have stated, under section 682.13(1) and our case law the standard of judicial review of

statutory arbitration awards is extremely limited. An award of arbitration may not be reversed on the ground that the arbitrator made an error of law.") (citations omitted)). This argument therefore fails.

### 2. Defendant Fails to Demonstrate that the Appraisal Panel Exceeded its Powers

Next, Defendant argues that the Appraisal Awards should be vacated because the Appraisal Panel exceeded its powers. To be clear, in this respect, Defendant argues:

> Mr. Pyka was not an "impartial" appraiser within the meaning of the Policy. An appraiser who repeatedly attempts to obtain a financial interest in the award cannot be said to act with "strict impartiality." Because Mr. Pyka satisfied neither the impartiality requirement of the Policy nor the stipulated requirement for the panel to act with strict impartiality, he was without power to act as an appraiser, including when he appointed Mr. Womack as umpire.

ECF No. 46 at p. Accordingly, this argument is based upon Defendant's supposition and speculation that Mr. Pyka had a financial interest in the Appraisal Awards. However, as discussed repeatedly above, Defendant has not provided this Court with evidence to support its speculative assertions. As a result, this argument fails.

### 3. Defendant Fails to Demonstrate that the Appraisal Awards were Procured by Corruption, Fraud, or Undue Means

Defendant further contends that the Appraisal Awards should be vacated because they were purportedly procured by corruption, fraud, or undue means. More specifically, Defendant argues:

> Mr. Pyka produced what appears to be a fabricated document to support his and Biscayne Beach's contention that Biscayne Beach never agreed to pay Mr. Pyka on a contingent fee basis. Westchester accepts that this document was created after the Appraisal Awards were procured, but believes that this fabricated time log is evidence of a long-term plan between Biscayne Beach and Mr. Pyka to conceal their true fee agreement. Biscayne Beach's and Mr. Pyka's interests are fully aligned in this matter. Mr. Pyka swore under oath that the time sheet that he produced was contemporaneously kept, but the evidence demonstrates that it was a recent fabrication. This fabrication should be imputed to Biscayne Beach because Mr. Pyka and Biscayne Beach together were parties to an improper fee agreement and this was an attempt to conceal that improper agreement. Additionally, Mr. Pyka's use of Mr. Martinez's estimates following Mr. Martinez's disqualification as appraiser shows that Biscayne Beach and its agents have been attempting to circumvent

the rules from the beginning. Further, Biscayne Beach submitted an affidavit for Mr. Pyka that contained materially false statements.

ECF No. 46 at pp. 17-18.

The are multiple problems with Defendant's argument. First, they are not supported by evidence. Indeed, Defendant has not presented this Court with any evidence upon which the Court could conclude that Plaintiff and Mr. Pyka have or had a contingency fee arrangement or that there was a conspiracy between Plaintiff and Mr. Pyka such that Mr. Pyka fabricated evidence (time logs) to conceal the true nature of his purported contingency fee arrangement with Plaintiff. Second, for the Court to accept Defendant's above arguments it would have to make unsupported leaps in its analysis.

In support of its arguments, Defendant offers the Wolfinger Forensics Report which analyzes Mr. Pyka's time logs and states "it is our conclusion that the time and expense spreadsheet was not contemporaneously kept and that many entries were entered in 2021." ECF No. 46-1 at p. 3. This conclusion, however, is not surprising because Mr. Pyka testified at his April 2, 2021 deposition that his time logs were not complete (ECF No. 46-5, 62:3-6 and 66:11-16). Moreover, even if Mr. Pyka's time logs were not kept contemporaneously, it does not necessarily mean that there must have been a conspiracy between Plaintiff and Mr. Pyka to fabricate evidence in order to conceal a contingency fee arrangement. This Court cannot make such a conclusion without actual evidence.

With respect to its contention that Mr. Pyka and Biscayne Beach colluded in the appraisal process, Defendant heavily relies upon the Wolfinger Forensics Report to support. In pertinent part, the Wolfinger Forensics Report states:

> The "Date Entered" value for the Xactimate work by Mr. Pyka is 5/22/2018 9:30PM. Also note the "Price List" in use for this file is named "FLM18X_MAY18". The Date Entered and Price List are from a date nearly 5 months before Mr. Pyka is involved with this claim. Reviewing the Xactimate work by Mr. Martinez of Nation Claim Service shows that his Xactimate file uses this same 'FLM18X_MAY18' and shows a 'Date Entered' in the file of 5/22/2018 . . . this suggests Mr. Pyka used the files created by Mr. Martinez as the basis for his work, and did not create his own original Xactimate files.

*Id.* at p. 14. This evidence, however, does not demonstrate that Mr. Pyka had a financial interest in the outcome of the appraisal. Nor does it demonstrate that there was a contingency fee arrangement between Plaintiff and Mr. Pyka or a conspiracy between them to fabricate

evidence to hide such an arrangement. Further, Defendant has not presented this Court with any caselaw or other legal support that establishes that an appraisal award should or must be vacated where an appraiser relies in part upon the work of a prior or different adjuster. Nor was this Court able to locate such an authority. As a consequence, Defendant's argument fails.

### 4. Defendant's Argument that the Appraisal Panel Exceeded its Powers or so Imperfectly Executed its Powers Fails

Defendant argues that the Appraisal Panel exceeded its powers or so imperfectly executed its powers such that a mutual, final, and definite award upon the subject matter was not made. ECF No. 46 at p. 19. More specifically, Defendant contends that the Appraisal Awards should be vacated because:

> Section 10(a)(4) of the FAA provides for vacatur where the panel "so imperfectly executed [their powers] that a mutual, final, and definite award upon the subject matter was not made." 9 U.S.C. § 10(a)(4). . . . The Declarations of Appraiser signed by each member of the panel states that the panel agreed to "make a true, just and conscientious award of the same." Mr. Womack [the Umpire] further "agree[d] to supply an estimate that coincides with the award." "Conscientious" is defined as "meticulous[,] careful[,] scrupulous." *State v. Taylor*, 269 P.3d 740 (Haw. 2011) (Acoba, J., concurring & dissenting) (quoting Merriam Webster's Collegiate Dictionary 245 (10th ed. 1993)). Accordingly, the panel agreed to make a "meticulous, careful, and scrupulous" appraisal award. Even if the panel did not agree to issue a "meticulous, careful, and scrupulous" award, an award should be vacated when "the arbitrator either failed to resolve an issue presented to him or issued an award that was so unclear and ambiguous that the reviewing court could not engage in meaningful review." *Int'l Longshoremen's Ass'n, Local No. 1624 v. Hampton Roads Shipping Ass'n*, 46 F.3d 1124, 1995 WL 19321, at *6 (4th Cir. 1995) (citing *Bell Aerospace Co. Div. of Textron v. Local 516*, 500 F.2d 921, 923 (2d Cir. 1974)). . . . Here, it is necessary for the parties to have sufficient information about the composition of the Appraisal Awards so that the Court can determine coverage for the specific elements. Westchester seeks vacatur because the Appraisal Awards are so unclear and ambiguous that the coverage provisions of the Policy cannot be applied. . . . Accordingly, the panel failed to issue a "meticulous, careful, and scrupulous" award as stipulated. The Appraisal Awards are not "meticulous, careful, and scrupulous, and are otherwise so unclear and ambiguous that it is not possible to determine what amounts are (1) within the scope of coverage, (2) excluded, or (3) within the Ordinance or Law sub-limit.

ECF No. 46 at p. 16-18. This argument fails.

First, the Court must note that Defendant's argument is not a basis for vacatur of an appraisal award under Florida Statutes § 682.13. "Pursuant to section 682.13, Florida Statutes, the authority of the trial court to vacate an arbitration award is *very narrow*. That statute provides only eight specific reasons upon which a trial court may vacate an arbitration award." *Vill. at Dolphin Com. Ctr., LLC v. Constr. Serv. Sols., LLC*, 143 So. 3d 942, 945 (Fla. 3d. DCA 2014) (emphasis added). *See also Boyhan v. Maguire*, 693 So. 2d 659, 662 (Fla. 4th DCA 1997) (stating "[r]eview of arbitration proceedings is extremely limited. An award may not be set aside by the court except upon the grounds set forth in section 682.13, . . . A reviewing court may not comb the record of the arbitration hearing for errors of fact or law inherent in the decision-making process." (citing *Schnurmacher Holding, Inc. v. Noriega*, 542 So.2d 1327 (Fla.1989) and *Dairyland Ins. Co. v. Hudnall*, 279 So.2d 905 (Fla. 3d DCA 1973)).

Unfortunately for Defendant, the Appraisal Panel "imperfectly executing its powers" is not one of the eight grounds for vacatur under Section 682.13. *See* Fla. Stat. § 682.13. And, as this Court previously determined, this action is governed by Section 682.13. Accordingly, Defendant's argument necessarily fails.

Second, Defendant's argument fails because even if an appraisal award purportedly being unclear or ambiguous (or otherwise not being "meticulous, careful, and scrupulous") was an enumerated ground for vacatur under Section 682.13 – which it is not – Defendant has not demonstrated that the Appraisal Panel exceeded its power.

The Florida Supreme Court has explained that an arbitration panel "exceeds [its] power when [it] goes beyond the authority granted by the parties or the operative documents and decides an issue not pertinent to the resolution of the issue submitted to arbitration." *Schnurmacher Holding, Inc. v. Noreiga*, 542 So. 2d 1327, 1328 (Fla. 1989). The claim that an arbitration panel exceeds its powers "is jurisdictional in nature and is in reference to the scope of authority given to [the panel] in the arbitration agreement." *Visiting Nurse Ass'n of Fla., Inc. v. Jupiter Med. Center, Inc.*, 154 So. 3d 1115, 1137 (Fla. 2014).

Here, the Policy states:

> If we and you disagree on the value of the property or the amount of loss, either may make written demand for an appraisal of the loss. In this event, each party will select a competent and impartial appraiser. The two appraisers will select an umpire. If they cannot agree, either may request that the selection be made by a judge of a court having jurisdiction. The appraisers will state separately the value of the property and amount of loss. If they fail to agree, they will

> submit their difference to the umpire. A decision agreed to by two will be binding.

ECF No. 46-1 at p. 22, § E.2. Thus, the Policy grants to the appraisers the authority to determine the value of the property and the amount of the loss. The Appraisal Awards, in compliance with the authority granted to the appraisers under the Policy, determined the value of the property and amount of the loss. *See* ECF No. 46-8, Ex. 8, Appraisal Awards. Defendant has not presented any evidence upon which the Court could conclude that the Appraisal Panel exceeded its authority. Boiling it down further, Defendant has not presented any evidence demonstrating that the Appraisal Panel decided an issue not pertinent to the resolution of the issue submitted to appraisal. Moreover, as this Court has recognized "delving into the arbitrator's process, absent an indication the arbitrator ultimately decided an issue beyond his authority, would be improper." *Charlevoix Equity Partners Int'l, Inc.*, 2018 WL 3827616, at *3 (citing *First Protective Ins. Co. v. Hess*, 81 So. 3d 482, 485 (Fla. 1st DCA 2011) ("After the parties have gone through the appraisal process, the trial court may not consider evidence beyond the face of the appraisal award.")). Accordingly, the Court cannot and will not venture into evaluating whether the Appraisal Awards contain the level of specificity Defendant claims they lack.

### E.  Defendant Waived its Arguments related to Mr. Pyka's purported Bias

Finally, the Court finds that even if Defendant provided an evidentiary basis for vacatur based upon Mr. Pyka's purported bias of financial interest in the Appraisal Awards – which it did not – Defendant waived those grounds for vacatur. *See Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Smolchek*, 2012 WL 4056092 at *3 (S.D. Fla. 2012) (holding that a party seeking vacatur of an arbitration award failed to establish evident partiality, in part, because the moving party was aware of the purported grounds for evident partiality but did not raise it until after several adverse arbitration rulings were issued and stating "[a] party that discovers the possibility of bias cannot ignore it, proceed as if it has no concerns regarding bias, and then after receiving a detrimental ruling, announce what it had known before the proceeding began.").

Here, Defendant admits that Mr. Pyka disclosed, by email, that the unsigned contingency fee agreement existed on February 3, 2020 – one month prior to the Appraisal Panel's issuance of the Appraisal Awards. ECF No. 54 at p. 10. Defendant argues, however,

that it did not waive its arguments regarding Mr. Pyka's alleged bias or impartiality because it did not have knowledge of the unsigned contingency fee agreement at the outset of the appraisal. Specifically, Defendant states:

> When Mr. Pyka disclosed his financial interest in the award seventeen months into the appraisal, Westchester had no option other than to wait and then file a motion to vacate the award. Westchester respected the process. . . . Biscayne Beach cites no authority for finding waiver where the disclosure is made at the end of the appraisal because permitting such a late disclosure defeats the purpose of requiring disclosure of conflicts and bases for partiality. In any event, Westchester expressly objected to Biscayne Beach paying its appraiser on a contingent fee at the outset of the appraisal process when Biscayne Beach appointed its public adjuster Lester Martinez as appraiser. Joint Stipulation [D.E. 11]. Biscayne Beach then repeated itself and appointed Mr. Pyka as appraiser and agreed to pay him on a contingent fee basis. Considering that Biscayne Beach repeated the very conduct that Westchester objected to and now vigorously argues that Mr. Pyka was indeed impartial and properly served as appraiser, Westchester was not required "to renew [its] objection … in what would have been an obviously futile gesture." *Webb v. Priest*, 413 So. 2d 43, 46 (Fla. Dist. Ct. App. 1982). Westchester had to allow the appraisal process to conclude without attorney interference so that the Court could decide the proper recourse.

ECF No. 46 at p. 10-11. This argument fails.

Contrary to Defendant's argument, "in order for the Court to consider a claim arising from events that occurred during the course of arbitration, the party asserting the allegations must have objected during the arbitration proceedings if they had knowledge of the adverse situation*.*" *Roberta Press Living Tr., Roberta Press v. T.D. Ameritrade, Inc.*, No. 11-81268-CIV, 2012 WL 13019191, at *2 (S.D. Fla. June 25, 2012) ) (citing *Cook Industries, Inc. v. Itoh & Co. (America) Inc.*, 449 F.2d 106, 107–08 (2nd Cir. 1971)). Defendant cannot "keep a proverbial ace up its sleeve in case things go badly" and "wait until it received a final adverse ruling to state its concerns[.]" *Tecnicas Reunidas de Talara S.A.C. v. SSK Ingeneria y Construccion S.A.C.*, No. 21-22206-CIV, 2021 WL 5098219, at *10 (S.D. Fla. Oct. 12, 2021) (quoting *Smolchek*, 2012 WL 4056092, at *3 citing *Bianchi v. Roadway Express, Inc.*, 441 F.3d 1278, 1285 (11th Cir. 2006)). "This conclusion is bolstered by the United States' robust policy of enforcing waiver in the context of arbitral disputes when addressing arbitrator bias." *Id.* (citing *Meyer v. Kalanick*, 477 F. Supp. 3d 52, 55 (S.D.N.Y. 2020) (holding a party with "knowledge of facts possibly indicating bias or partiality on the part of an arbitrator [ ] cannot remain silent and

later object to the award of the arbitrators on that ground[;] [its] silence constitutes a waiver of the objection." (alterations added; quotation marks and citation omitted)).

Furthermore, Defendant's reliance on *Webb v. Priest* is misplaced. There, the Third District reviewed final judgments entered after a jury trial in a malpractice action. Thus, that case did not involve an arbitration or appraisal proceeding. Moreover, in *Priest*, the Third District noted "[t]he record shows that [the Appellant] strongly objected to the introduction of the fact that certain parties had been dropped as defendants both prior to trial and in the early stages of the trial. He was overruled by the trial court in no uncertain terms. We will not require Webb to renew his objection each time in what would have been an obviously futile gesture." Webb v. Priest, 413 So. 2d 43, 46 (Fla. 3d. DCA 1982) (citing *LeRetilley v. Harris*, 354 So.2d 1213 (Fla. 4th DCA 1978), *cert. denied*, 359 So.2d 1216 (Fla.1978)). Thus, it is apparent that the appellant in *Webb* raised his objections and was overruled. That is not the scenario presented in the case at bar. As previously discussed, Defendant admitted that it had knowledge of the unsigned contingency fee agreement prior to the issuance of the Appraisal Awards. Indeed, Defendant also admits that it knew how to object to an appraiser being partial because it did so with respect to Mr. Martinez serving as Plaintiff's appointed appraiser; however, Defendant made a calculated choice to not raise an objection to Mr. Pyka's participation in the appraisals. *See* ECF No. 54 at 10. This Court cannot countenance Defendant's attempt to have its cake and eat it too. A party cannot strategically use silence in an appraisal proceeding and then request that a court later save it from its strategic choices when that strategic choice of silence fails to garner the desired result in the appraisal proceeding. The Court, therefore, finds that Defendant's failure to object to Mr. Pyka serving as an appraiser despite having knowledge of the unsigned contingency fee agreement prior to the issuance of the Appraisal Awards constitutes a waiver of its objection as to Mr. Pyka's purported bias or partiality.

## II. Plaintiff's Motion for Confirmation of the Appraisal Award is Granted

Under Florida's Arbitration Code, "[i]n the absence of a motion legally sufficient under either section 682.13 or 682.14, the trial court must confirm the award." *Charlevoix Equity Partners Int'l, Inc.*, 2018 WL 3827616, at *5 (citing *Wells v. Castro*, 117 So. 3d 1233, 1237–38 (Fla. 3d DCA 2013)). Because, as discussed above, the Court finds Defendant's

Renewed Motion to Vacate to be legally insufficient, the Court confirms the appraisal award, consistent with the analysis above.

### III.     Defendant's Motion to Dismiss is Denied

Finally, the Court denies Defendant's Motion to Dismiss which, in essence argues – without any evidentiary support – that this action should be dismissed with prejudice and sanctions should be entered against Plaintiff because Plaintiff and Mr. Pyka purportedly fabricated evidence (time logs) in furtherance of a scheme to conceal an improper contingency fee arrangement. This Order already includes a thorough analysis of the evidence adduced in this matter and the lack of evidence in support of Defendant's suppositions and speculations regarding the purported contingency fee arrangement between Plaintiff and Mr. Pyka as well as Mr. Pyka's purported biases and financial interest in the Appraisal Award. As such, the Court will not reiterate that analysis here. Suffice it to say, the Court finds that Defendant's Motion to Dismiss lacks legal merit because it lacks evidentiary support; therefore, it must be denied.

### Conclusion

For the reasons discussed above, it is hereby **ORDERED and ADJUDGED** as follows:

1. Defendant Westchester Surplus Lines Insurance Company's Renewed Motion to Vacate Appraisal Award (ECF No. 46) is **DENIED**;
2. Plaintiff Biscayne Beach Condominium Association Inc.'s Motion for Confirmation of Appraisal Award (ECF No. 57) is **GRANTED**; and
3. Defendant Westchester Surplus Lines Insurance Company's Motion to Dismiss with Prejudice for Fraud on the Court and for Sanctions (ECF No. 49) is **DENIED**.

**DONE and ORDERED** in Chambers at Miami, Florida this 1st day of March 2022.

_____
MARCIA G. COOKE
United States District Judge

*Copies furnished to:*
*All Counsel of record*